In the Matter of the Probate of the Will of Frances J. Cook, Deceased.

Rachel Barber et al., Appellants; Bank of America et al., as Executors, et al., Respondents.

Surrogate's Court — practice — decedent's estate — heirs and next of kin may by assignment or release of their interests become as strangers to estate — agreement not to contest will in consideration of advanced payment amounts to agreement to make no further claim against estate — next of kin who take money under such an agreement have no interest to contest the will on any ground — agreement not against public policy — not entitled, as of right, to jury trial of question whether they are entitled to contest — agreement cognizable only in equity and surrogate, in exercise of equitable jurisdiction, will determine question — separate hearing apart from probate proceedings proper.

1. Only those interested in the estate, the heirs and next of kin, are authorized to contest the probate of a will,. and even they may become as strangers to the estate by having assigned all their interests therein or having released all their rights or prospective interests to the person making the will. Equity recognizes the force of such agreements or releases and when fairly made for an adequate consideration gives them effect and validity.

2. Letters and papers signed by relatives of a testatrix, wherein they state that they will not contest her will upon the receipt of advanced payments, in reality amount to agreements that they will make no further claim upon her estate. No form of words is necessary to make out such an agreement. The intention must be gathered from all the surrounding circumstances and the writings interpreted according to the purpose which the parties had in mind, and where they clearly indicate that the amounts to be advanced were in lieu of provisions which testatrix would otherwise have made for her relatives in her will, and they took the money, they must be held to their agreement and be deemed as strangers to the estate with no interest to contest the will on any ground. Such agreements are not against public policy.

3. Next of kin, who have received advances under such agreements, are not entitled, as of right, to a jury trial of the question whether they are entitled to contest the will. Such agreements are only

cognizable in equity and the surrogate, who has equity jurisdiction under section 40 of the Surrogate's Court Act, after hearing the parties and taking the proof will determine whether they have any legal or equitable standing in his court. The separate hearing of preliminary issues apart from the probate proceedings and before the main contest has been the uniform practice in the Surrogates' Courts and is justified by subdivision 3 of section 443 of the Civil Practice Act.

*Matter of Cook*, 217 App. Div. 342, affirmed.

(Argued November 22, 1926; decided December 31, 1926.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered July 9, 1926, which affirmed an order of the Washington County Surrogate's Court directing a separate trial of issues raised upon a petition to strike out contestants' answers and denying a jury trial.

*Walter A. Fullerton* and *Leo E. Pratt* for appellants. The so-called agreements are against public policy. (*Matter of Kingsbury*, 192 App. Div. 206; *National Park Bank* v. *Billings*, 144 App. Div. 536; 203 N. Y. 556; *McClure* v. *Raben*, 133 Ind. 507; *Stevens* v. *Stevens*, 181 Mich. 438; *Warren* v. *Union Bank of Rochester*, 157 N. Y. 259.) The Surrogate's Court has not jurisdiction to pass upon the validity of the alleged agreements not to contest. (*Matter of Walker*, 136 N. Y. 20; *Matter of Heinze*, 179 App. Div. 453; 224 N. Y. 1; *Adams* v. *Swift*, 169 App. Div. 802; *Hermann* v. *Ludwig*, 186 App. Div. 287; *Alfred University* v. *Frace*, 193 App. Div. 279; *Matter of Mondshain*, 186 App. Div. 528; *Matter of Hearne*, 171 N. Y. Supp. 984; *Isaacs* v. *Isaacs*, 208 App. Div. 61; *Matter of Mathewson*, 210 App. Div. 572; *Matter of Lally*, 210 App. Div. 757.) The validity of these alleged agreements should not be determined separate and apart from the main will contest. (*Matter of Walker*, 136 N. Y. 20; *Matter of Hearne*, 171 N. Y. Supp. 984; *McGurty* v. *D., L. & W. R. R. Co.*, 172 App. Div. 46; *City of Syracuse* v.

*Hogan,* 234 N. Y. 457; *Matter of Boyle,* 242 N. Y. 342; *Kohlman* v. *Bremer,* 216 App. Div. 552; *Commercial Trust Co.* v. *Columbia Trust Co.,* 183 App. Div. 106; *Insurance Co. of North America* v. *Whitlock,* 207 App. Div. 319; *Romanio* v. *Lamport & Holt, Ltd.,* 207 App. Div. 861; *Woicianowicz* v. *P. & R. Coal & Iron Co.,* 232 N. Y. 256.)

*Lawrence B. McKelvey, John Ross Delafield, William S. Savage, Matthew C. Fleming* and *George N. Whittlesey* for respondents. The agreements not to contest her will, made between the testatrix and her next of kin, are not against public policy. (*Matter of Kiltz,* 125 Misc. Rep. 475; *Matter of Klein,* 121 Misc. Rep. 568; *Matter of Hagen,* 119 Misc. Rep. 770; 206 App. Div. 682; *Clark* v. *Lyons,* 38 Misc. Rep. 516; 76 App. Div. 622; *Kinyon* v. *Kinyon,* 72 Hun, 452; *Riordan* v. *First Presbyterian Church,* 6 Misc. Rep. 84; *Johnston* v. *Spicer,* 107 N. Y. 185; Schouler on Wills [5th ed.], 811, § 605-a; *Moss* v. *Cohen,* 158 N. Y. 240.) The contestants are not entitled to a jury trial on the question of the validity of the alleged agreements not to contest. (*Imperial Shale Brick Co.* v. *Jewett,* 169 N. Y. 143; *Moss* v. *Burnham,* 50 App. Div. 302; *O'Beirne* v. *Bullis,* 158 N. Y. 466; *Stono* v. *Weiller,* 128 N. Y. 655; *Van Rensselaer* v. *Van Rensselaer,* 113 N. Y. 214; *Untermyer* v. *Beinhauer,* 105 N. Y. 524; *Matter of Fox,* 166 App. Div. 718; *Vollkommer* v. *Frank,* 107 App. Div. 594; *Carroll* v. *Diemel,* 95 N. Y. 255; *Matter of Reinhardt,* 92 Misc. Rep. 96.) The Surrogate's Court has full and complete jurisdiction and power to determine all the issues of law and fact raised by the pleadings with respect to the agreements not to contest the will. (*Matter of Hamilton,* 76 Hun, 200; *Matter of Peaslee,* 73 Hun, 113; *Matter of Comins,* 9 App. Div. 492; *Matter of Thompson,* 41 Misc. Rep. 223; *Matter of McGarren,* 112 App. Div. 503; *Matter of Garner,* 59 Misc. Rep. 116; *Matter of Fox,*

[244 N. Y. 63]          Opinion, per CRANE, J.                    [Dec.,

166 App. Div. 718; *Matter of Reinhardt,* 92 Misc. Rep. 96; *Matter of Lord,* 90 Misc. Rep. 222; *Matter of Zimmerman,* 104 Misc. Rep. 516; *Matter of Goldmark,* 186 App. Div. 447; *Matter of Malcolmson,* 188 App. Div. 600.)

CRANE, J. Frances Julia Cook, an elderly widow of considerable wealth, desired to make a will disposing of her property to certain charities. She had no children, and her only heirs and next of kin were a sister, a niece and two nephews. These relatives were of mature years, and apparently not on terms of great intimacy with Mrs. Cook. At least the relationship apparently did not draw them together with any frequency.

In preparing for the disposition of her property, she wrote to her niece, Kathryn E. Russell, in January of 1924, as follows:

" DEAR KATHERINE:

" In making my will, it was my intention to bequeath you something. After consideration, it occurred to me that it will give me greater pleasure to give it now, and you to receive it now, and in so doing I am asking you if you would be willing to sign and receipt an agreement, agreeing that in consideration of this gift now, that you agree that you will not at any time contest or join with others in contesting my will. The same conditions apply to your two (2) brothers, who must also sign such an agreement.

" * * * Kindly let me have full names and addresses of your brothers."

Kathryn's reply indicates that she knew very little of her aunt, or as she says, " about my father's people." She is glad to receive the gift as her brothers and herself are trying to get a home for their respective families. Having failed to state, however, anything about contesting the will, another letter followed on February 8, 1924, written by G. E. Knowlton, on behalf of Mrs. Cook, wherein he states:

1926.]        Opinion, per CRANE, J.       [244 N. Y. 63]

" DEAR MRS. RUSSELL:

" Mrs. Robert H. Cook has handed me your letter of January 21st in which you state that you would appreciate a gift from her, but you do not say that you will agree to refrain from contesting her will.

" May I ask you to be good enough to advise Mrs. Cook as to your attitude in this matter."

A few days afterwards " Niece Kathryn " replied:

" DEAR AUNT JULIA:.

" I am sorry that I omitted to state in my letter that I would agree to the agreements mentioned in your letter. I both appreciate and agree to those conditions."

Thereafter Kathryn signed and sent to Mrs. Cook the following agreement:

" Dated *March* 5, 1924.

· " Received from: Frances Julia Cook

. . . . . . . . . . . . . . . . . . . . . . Dollars

as a gift from her and in consideration of this gift, I agree that I will not at any time contest or join with others in contesting her Will."

Kathryn Russell received from Mrs. Cook a check for $4,000, which she deposited and kept. She writes a long letter under date of March 18, 1924, expressing to her Aunt Julia her gratitude for the gift and telling her of the use which she is to make of the money in purchasing a farm. Similar correspondence was had with the nephews, each of whom received $4,000, and signed a like agreement. Mrs. Rachel Barber, the sister, living at Fair Haven, Vermont, received $5,000, and she also signed an agreement not to contest or join with others in contesting Mrs. Cook's will. The other correspondence between the parties need not be mentioned.

By her last will and testament, dated the 14th day of February, 1924, Frances Julia Cook, describing herself as the widow of Robert H. Cook, of the town of Whitehall, New York State, gave $20,000 to The American Museum

of Natural History of the city of New York and the remainder of her estate to the American Female Guardian Society and Home for the Friendless, located at Woodycrest avenue in the city of New York. The •testatrix died June 10, 1925, and her will has been offered for probate in the Surrogate's Court of Washington county.

Having received the advances or gifts under the circumstances above detailed, can these heirs and next of kin of Mrs. Cook now contest her will? They have sought to do so, alleging that she was incompetent to make a will, and that the same was procured by fraud and undue influence.

None is authorized to contest the probate of a will except those interested in the estate, the heirs and next of kin. Even an heir or a next of kin may become as a stranger to the estate by having assigned all his interest therein or having released all his rights or prospective interests to the person making the will. At common law, a mere possibility could not be assigned. Equity, however, recognized the force of such agreements or releases, and when fairly made for an adequate consideration, gave them effect and validity. The release of an expectancy on the condition of an advance being made, was held to be binding and enforcible in *Eissler* v. *Hoppel* (158 Ind. 82). Likewise an agreement made on consideration never to assert any right, title or interest as heirs in certain property and not to contest in any manner or to any extent whatever the last will and testament, has been given force by the courts of California, in *Matter of Garcelon* (104 Cal. 570). To the same effect is *Gore* v. *Howard* (94 Tenn. 577). In *Brands* v. *DeWitt* (44 N. J. Eq. 545) it was held that an heir at law may for a sufficient consideration release to his father the share which he might have at the parent's death in his estate real or personal so that he will be thereafter estopped from establishing any claim thereto as one of his heirs at law or next of kin. Agreements not to contest by

1926.]                    Opinion, per CRANE, J.            [244 N. Y. 63]

reason of advances made or property turned over, may be regarded as agreements to make no claim to any share of the estate. (*Havens* v. *Thompson,* 26 N. J. Eq. 383; *Quarles* v. *Quarles,* 4 Mass. 679; *Kenney & Ux.* v. *Tucker,* 8 Mass. 142.) The only case I find in this State touching on this point is *Kinyon* v. *Kinyon* (72 Hun, 452).

There has never been any question about the agreements made between the heirs or next of kin and the representatives of an estate *after* the death of a testator regarding settlements and compromises. These have always been held to be good, when made in good faith, and not against public policy. (*Moss* v. *Cohen,* 158 N. Y. 240; *Seaman* v. *Colley,* 178 Mass. 478; *Grochowski* v. *Grochowski,* 77 Neb. 506; *Hall* v. *Hall,* 125 Ill. 95; 38 Amer. Law Rep. Annotated, 753.) This, however, is not such a case. We are not here dealing with agreements made after the death of the testator, but agreements made *before* the death of the testator regarding the future disposition to be made of an estate, and the claims of the parties thereto. Such agreements are akin to those implied in the taking of a legacy bequeathed upon the condition stated in the will that no contest shall be made. Such provisions have been recognized as good. (*Bradford* v. *Bradford,* 19 Ohio St. 546; 2 Jarman on Wills, *902; 2 Redfield on Wills, *298; *Smithsonian Institution* v. *Meech,* 169 U. S. 398; *Moran* v. *Moran,* 144 Iowa, 451. But see *Matter of Arrowsmith,* 162 App. Div. 623, and *South Norwalk Trust Co.* v. *St. John,* 92 Conn. 168.)

Do the letters and the papers signed by Mrs. Cook's relatives, wherein they state that they will not contest her will upon the receipt of an advanced payment, in reality amount to agreements that they will make no further claim upon her estate? We think they do. No form of words is necessary to make out such an agreement. The intention must be gathered from all the surrounding circumstances and the writings interpreted according to the purpose which the parties had in mind.

If, for instance, Kathryn Russell had agreed to take $4,000 in lieu of any interest which she might have as heir or next of kin in Mrs. Cook's estate, and released all her expectancy therein, it cannot be doubted that in the light of the above authorities, such an agreement would bind her in equity. Every consideration of justice would demand that such an agreement, fairly and openly made while the testatrix was alive, and relied upon in disposing of her property, should be supported. The niece under such an agreement would become as a stranger to the estate; she would have no interest entitling her to contest the will. Whether it were a forgery or made under undue influence or through fraud, would be no concern of hers. These matters would be subjects of inquiry by the surrogate charged with the duty of only probating wills legally executed, or of contest by those who had a justiciable interest in the estate. Any party to the proceeding before filing objections may request the oral examination of the subscribing witnesses thereto (Sec. 141, Sur. Ct. Act) and the surrogate must be satisfied with the genuineness of the will and the validity of its execution before admitting it to probate. (Sec. 144.)

Such in effect is the agreement which the heirs and next of kin made with Mrs. Cook. She notified them that she was to make her will, and desired to leave them a legacy. She said, however, that it would give, perhaps, more satisfaction if she advanced the amount in cash while she was alive, and that she would do so if they agreed not to contest her will. The amount which she was to advance or give to them was in lieu of the provision which she otherwise would make for them in her will. The letters clearly indicate that the relatives were not to have the gift of money and also a provision in the will. They could have the one or the other, but not both. They might elect to take the cash in advance, but if they did so, they were to receive nothing more, and have no further interest in Mrs. Cook's estate. They

1926.] Opinion, per CRANE, J. [244 N. Y. 63]

took the money and must now be held to their agreement. They are as strangers to this estate, and have no interest whatever to contest the will on any ground.

This appeal comes to us on certified questions in a proceeding brought by the executors to obtain an order from the Surrogate's Court striking out the objections filed by the next of kin to the probate of the will. In answer to the petition which alleged in full all the facts herein stated, the defendants pleaded that their agreements not to contest were obtained by fraud and deceit, and were not the acts of Mrs. Cook. The surrogate ordered — and it is the order appealed from — that the issues arising on the petition to strike out the objections be tried preliminary to and separate and apart from the probate proceedings. The demand of the proposed contestants for a jury trial was denied. This order having been unanimously affirmed by the Appellate Division, that court certified two questions for our review:

" 1. Are the alleged agreements not to contest against public policy?

" 2. Are the contestants entitled to a jury trial on the question of the validity of the alleged agreements not to contest? "

The first question we have already answered. The alleged agreements are not against public policy. The second question was properly answered in the disposition made of this case below. The alleged contestants are not entitled to a jury trial upon this question as to whether or not they have a right to contest; that is, whether or not the agreements made by them are binding upon them and oust them from the probate proceeding. As we have above stated, such agreements are only cognizable in equity; they are enforced by a decree which enjoins or prevents a contracting party from proceeding contrary to the agreement. Equity molds the relief to fit the situation, to compel the party to keep his bargain. As the Surrogate's Court, under section 40 of the Surrogate's

Court Act, now has equity jurisdiction, the surrogate after hearing the parties and taking the proof, will determine as would a court of equity whether these next of kin have any legal or equitable standing in his court. The surrogate must always determine on an application to probate a will who are the proper parties to be cited and who are entitled to contest. These questions are not for a jury as a matter of right, although section 68 authorizes a jury trial in the discretion of the surrogate. That these preliminary issues should be heard separate and apart from the probate proceedings and before the main contest, is not only justified by section 443, subdivision 3, of the Civil Practice Act, but apparently has been the uniform practice in the Surrogates' Courts. (*Matter of Fox*, 166 App. Div. 718; *Matter of Comins*, 9 App. Div. 492; *Matter of McGarren*, 112 App. Div. 503; *Matter of Hamilton*, 76 Hun, 200; *Matter of Peaslee*, 73 Hun, 113; *Matter of Zimmerman*, 104 Misc. Rep. 516; *Matter of Guilford's Will*, 185 N. Y. Supp. 248.) Such procedure would seem necessary in order to simplify the issues if the validity of a will is being tried out before a jury. Experience teaches that the issues for a jury should be as simple and as few as possible.

The order, therefore, should be affirmed, with costs, and both questions answered in the negative.

POUND, MCLAUGHLIN and ANDREWS, JJ., concur, with CRANE, J.; HISCOCK, Ch. J., CARDOZO and LEHMAN, JJ., concur in result.

Ordered accordingly.