In the Matter of the Estate of VIVIEN HELEN DE LA POER BERESFORD, Deceased.

Surrogate's Court, New York County, December 27, 1932.

*Dean, King, Smith & Taylor,* for the petitioner.
*Edgar J. Kohler,* special guardian.

O'Brien, S.   This is an accounting by the ancillary administrator of the estate of Vivien Helen de la Poer Beresford (Lady Decies).   Objections to the account have been filed by the special guardian representing her infant children, Eileen O'Brien, Catherine Beresford and Arthur Beresford.

(1) The principal objections relate to the disposition made by the ancillary administrator of the sums of $217,857.14 and $7,142.86, which, upon the death of the decedent, were included in moneys which came into its hands, and were treated by the ancillary administrator as assets of her estate.   The objections also relate to the proposed disposition to be made by the ancillary administrator of certain annual payments received by Lady Decies and to be received by her estate, amounting to $7,714.32 per annum.   It is the contention of the special guardian that these moneys are subject to a trust created by Lady Decies, by indenture of trust, dated December 14, 1920, and are not part of the corpus of her individual estate.

Under the will of Jay Gould, her grandfather, George J. Gould (Lady Decies' father) was the beneficiary for life of a trust of one-sixth of the residuary estate.   The remainder of such trust was limited to the issue of George J. Gould in such proportions as the latter might designate by his last will and testament, or failing such designation, in equal shares to his issue.   Jay Gould died in 1892.   George J. Gould, Edwin Gould, Helen G. Shepard and Howard Gould were appointed the executors and trustees of his estate.   George J. Gould died in 1923.   By his will he appointed the remainder of the trust of which he was the life beneficiary under his father's will equally among his seven children by his first wife, of whom Lady Decies, the decedent herein, was one.   In 1916 an accounting action was instituted in the Supreme Court, New York county, to judicially settle the accounts of the executors and trustees of the estate of Jay Gould.   On December 14, 1920, Lady Decies executed the indenture of trust whereby she transferred to the Equitable Trust Company of New York, as trustee, all her right, title and interest which she then had or in the future might have in the residuary estate of her grandfather, Jay Gould.   To this indenture of trust, Lord Decies, her husband, was a party.   It was executed as an inducement to George J. Gould to make certain advances to Lord Decies.   Under this trust indenture it was provided, among other things, that out of Lady Decies' share to which she was entitled in the residuary estate of Jay Gould, when received by the trustee after George J. Gould's death, the trustee would repay to the estate of George J. Gould the sums advanced to Lord Decies, with interest, and would hold the balance of such share and pay over the income thereof to Lady Decies as life beneficiary.   Upon her death

the principal thereof was to be distributed among her descendants in equal shares. The Equitable Trust Company, as trustee under this indenture, as well as Lady Decies and her minor children, were, upon the execution thereof, made parties to the accounting action then pending in the New York Supreme Court, entitled Gould v. Gould, to settle the accounts of the executors and trustees of the estate of Jay Gould. The children of Lady Decies appeared in that action by a guardian *ad litem*. Numerous objections were filed to the accounts of the executors and trustees of the Jay Gould estate. An extended litigation followed. The referee appointed therein found that the executors and trustees should be surcharged for the loss of many millions of dollars. To avoid further litigation, however, and to finally and conclusively terminate the accounting proceeding which had been pending a great many years, an agreement of settlement was proposed whereby the four trustees were to contribute certain moneys in discharge of the surcharges found against them as executors and trustees of the estate. Under the terms of this proposed settlement, the share that George J. Gould's estate was obligated to pay to the estate of Jay Gould approximated $5,500,000. This amount was to be paid out of his individual residuary estate.

It appears that George J. Gould made provision in his will for his widow, Guinevere S. Gould, who was his second wife, and her three children, by establishing a preferential trust amounting to $4,000,000, the income of which was to be paid to Guinevere S. Gould during her lifetime and the principal after her death to her three children. The residue of the individual estate of George J. Gould was to be held in trust for his ten surviving children, the seven children by his first marriage and the three children by his second marriage. The effect of the proposed payment of $5,500,000 to the estate of Jay Gould was to reduce the shares of the ten children of George J. Gould who were the residuary legatees under his will. Lady Decies was one of them. However, as an inducement to the seven children of George J. Gould by his first marriage to enter into the proposed settlement in the estate of Jay Gould, and as a condition thereto, George J. Gould's widow, Guinevere S. Gould and her three children, by their guardian, agreed and consented that the sum of $1,525,000 be paid in equal shares to the seven children of George J. Gould by his first marriage. Thus, each such child's share amounted to $217,857.14. The sum of $1,525,000 necessary for these payments was to be procured by decreasing the preferential trust fund of $4,000,000 for Guinevere S. Gould and her children by that amount. In addition, and as a further inducement to enter into the proposed settlement,

Edwin Gould, Helen G. Shepard and Howard Gould individually agreed to pay to each of the seven children of George J. Gould the sum of $7,142.86, and the sum of $7,714.32 annually thereafter. In accordance with these proposed arrangements, two stipulations were entered into, one being entitled " Stipulation for Compromise," dated December 4, 1926, and the other " Separate Agreement," dated December 16, 1926. These stipulations embodied the terms of the settlement agreed upon by the parties and terminated the litigation in the Jay Gould estate. They were subject to the approval of. the court in the action of Gould v. Gould. They were likewise subject to the approval of the New Jersey court, under whose jurisdiction the estate of George J. Gould was being settled, George J. Gould having died a resident of that State. The decrees of the New York and New Jersey courts settling the respective estates of Jay Gould and George J. Gould approved the proposed stipulations of compromise, and pursuant to such compromise, and pursuant to the decrees of these courts, there was paid to the seven children of George J. Gould, including Lady Decies, the decedent herein, individually and in cash, the aforesaid sums of $217,857.14 and $7,142.86. There was no direction in either of the decrees or judgments in these estates that the moneys payable to Lady Decies should be paid over to her trustee under the trust indenture executed by her on December 14, 1920. The children of Lady Decies, by guardian *ad litem*, and the Equitable Trust Company, as trustee under her trust indenture, were all parties. to and joined in the settlement agreements. The acquiescence and consent of the children of Lady Decies to these payments estops them now from asserting the claim that these moneys should have been paid to the trustee as part of the corpus of the trust under the trust indenture. The compromise agreement was entered into in good faith. There is no evidence here that fraud or deceit was perpetrated by any one . upon the children of Lady Decies, nor that their rights were not considered in the negotiations for the settlement of the protracted litigation in the Jay Gould estate. The payments to Lady Decies were made directly to her in consideration of her entering into the agreement to compromise the liability of the surcharges found to be due against the executors and trustees of the estate of her grandfather, Jay Gould. The payments made to Lady Decies personally were made, not out of the Jay Gould estate, but were made out of the preferential trust fund of $4,000,000 in the George J. Gould estate, from the share of Guinevere S. Gould and her children, and out of the individual interests of Edwin Gould, Helen G. Shepard and Howard Gould. The compromise to which Lady Decies, the trustee under her indenture of trust and her infant children,

through their duly appointed guardian, were parties, was valid and binding. As was said in *Minehan* v. *Hill* (144 App. Div. 854): " A promise made upon a settlement of disputes and to prevent litigation is made upon a good consideration, and the settlement of a doubtful claim will uphold a promise to pay a stipulated sum or do any other lawful act. (*White* v. *Hoyt*, 73 N. Y. 505, 514.) Courts from the earliest times have favored compromises of *bona fide* disputes and have held agreements therefor to be founded upon good consideration irrespective of the validity of the claim which was compromised. (*Goilmere* v. *Battison*, 1 Vern. 48; *Cann* v. *Cann*, 1 Williams, 723; *Penn* v. *Lord Baltimore*, 1 Ves. Sr. 444; *Russell* v. *Cook*, 3 Hill, 504; *Hogue* v. *Hogue*, 1 Watts, 163, 216; *Leach* v. *Fobes*, 11 Gray, 568; *Sears* v. *Grand Lodge A. O. U. W.*, 163 N. Y. 374.) Judges have stated the rule in various language, all, however, to the same tenor. In *Russell* v. *Cook* (*supra*), COWEN, J., says: ' In such cases it matters not on which side the right ultimately turns out to be. The court will not look behind the compromise.' "

The courts of our State have generally recognized the validity of settlements in estates in the absence of bad faith or fraud and have given such settlements vigorous support. (*Fisher* v. *Fisher*, 253 N. Y. 260; *Matter of Cook*, 244 id. 63, 69; *Matter of Pruyn*, 141 id. 544; *Matter of Wagner*, 119 id. 28, 37; *Matter of Waters*, 183 App. Div. 840; *Matter of Tyrrell*, 115 Misc. 714; affd., 198 App. Div. 1001; *Slater* v. *Slater*, 208 id. 567; affd., 240 N. Y. 557; *Matter of Crowe*, 139 Misc. 648, 651.) I hold, therefore, that the stipulations of compromise entered into between the parties were valid and binding upon the infant children of Lady Decies, who were parties thereto, as well as upon the trustee under the trust indenture executed by Lady Decies, and such compromise may not now be attacked by the special guardian representing the same infants in this proceeding.

But aside from the validity of the compromise itself or the stipulations of compromise, I hold further that the final decree of the Chancery Court of New Jersey, filed March 29, 1927, the final judgment in the accounting action of Gould v. Gould in the Supreme Court, New York county, entered May 31, 1927, and the judgment settling the accounts of the Chase National Bank as successor to the Equitable Trust Company as trustee of the trust created by Lady Decies under the trust indenture in 1920, entered February 29, 1932, are conclusive and binding upon the children of Lady Decies as to all matters embraced in such decree and judgments. (*Bailey* v. *Buffalo L., T. & S. D. Co.*, 213 N. Y. 525; *Joseph* v. *Herzig*, 198 id. 456; *Slater* v. *Slater*, 175 id. 143; *Matter of Hoyt*, 160 id. 607;

*Bowditch* v. *Ayrault*, 138 id. 222; *Griffin* v. *Long Island R. R. Co.*, 102 id. 449; *Hull* v. *Hull*, 225 id. 342.) The final decree of the New Jersey Chancery Court and the final judgment in the accounting action of Gould v. Gould in the New York Supreme Court both confirmed the agreements of the parties. The judgment settling the account of the Chase National Bank as successor to the Equitable Trust Company as trustee of the trust indenture executed by Lady Decies, was procured in a proceeding to settle the accounts of the trustee under that trust indenture. Here, too, it must be reiterated, the children of Lady Decies were represented by their guardian. It was found in that proceeding that the trustee under the trust indenture had received from the trustees of the estate of Jay Gould " all of the cash securities and property which are or were payable or transferable to it under the terms of the will of Jay Gould, deceased  *  *  *." No question was raised in that proceeding that the moneys paid to Lady Decies individually were improperly paid to her and should have been paid over to the trustee under her trust indenture. The infants' guardian could have raised that point. His failure to do so, and his acquiescence, estops the special guardian in this proceeding from raising the question anew on behalf of his wards. The objections of the special guardian with respect to the moneys in question are, therefore, overruled.

(2) The objection of the special guardian to the transmittal by the ancillary administrator of the New York assets of the estate to the domiciliary administrator in England is overruled. Under the provisions of section 164 of the Surrogate's Court Act it is the duty of an ancillary representative to transmit the assets of an estate to the domiciliary forum, unless otherwise directed by the decree of the court issuing the letters. In *Matter of Worch* (124 Misc. 380) my colleague, Surrogate FOLEY, pointed out the circumstances justifying the exercise of the judicial discretion to permit the retention and distribution in the local jurisdiction of the assets held by an ancillary representative. He said: " In ancillary administration, the recognition of the rights of foreign creditors and beneficiaries of the estate, and the distribution by decree of the local court are essentially in the discretion of the surrogate under the statutes and authorities of our State. We may, in special cases, direct a distribution of the New York property in the hands of our administrators among non-resident claimants. The general course of procedure, however, has been to remit the surplus funds, after the payment of our creditors, to the domiciliary executor, administrator or other representative. The transmissal of the assets to the State or country of residence is a matter of judicial discretion, depending upon the circumstances of the particular case. (*Helme*

v. *Buckelew*, 229 N. Y. 363, 372; *Hopper* v. *Hopper*, 125 id. 400, 405; *Matter of Hughes*, 95 id. 55, 59; *Despard* v. *Churchill*, 53 id. 192, 199; *Parsons* v. *Lyman*, 20 id. 103; *Bostwick* v. *Carr*, 165 App. Div. 55; *Matter of Bliss*, 121 Misc. 773; *Moyer* v. *Weil*, 1 Dem. 71.) Our statutes likewise compel this course of procedure. Under the provisions of section 164 of the Surrogate's Court Act the ancillary representative must transmit the assets unless otherwise directed by the decree of the court issuing the letters. Section 165 of the Surrogate's Court Act authorizes the surrogate, in his discretion, after the payment in full or *pro rata* of the New York creditors, to decree distribution to persons interested in the estate without transmission. This discretion to distribute in the ancillary administration will be exercised only where it tends to promote justice or convenience; or where all the interested parties are before the court; or where there are no debts; or where local distribution will avoid the expense of double administration, or in general to avoid unnecessary circuity. (36 Harvard L. Rev. 608.)"

The special guardian urges that the assets of Lady Decies' estate should have been retained in New York and fully administered and distributed here because the transmittal thereof to the English administrators resulted in heavy English death duties being levied upon the shares of the beneficiaries. This circumstance alone does not justify a local distribution of the assets of the estate. The bulk of the estate of the decedent is in England. The descent and distribution of the assets of the estate are governed by the law of England. None of the beneficiaries are within this jurisdiction. They reside in England and are desirous of having the estate administered and distributed there. It does not appear that justice or convenience will be promoted by a distribution in this State, or that double expense will be avoided, or that there are no debts of the decedent in the domiciliary forum. In these circumstances, the usual procedure set forth in section 164 of the Surrogate's Court Act should be followed. The decree settling the account of the ancillary administrator may contain a direction for the transmittal of the assets to the representatives of Lady Decies' estate in England, to be there administered.

(3) The special guardian's objections with respect to the payments made by the ancillary administrator of the attorneys' bills for services rendered to Lady Decies and to her estate, as set forth in the account, are overruled.

Submit decree on notice overruling the objections and settling the account accordingly.