### In the Matter of the Estate of JAY GOULD, Deceased.

Surrogate's Court, New York County, October 18, 1939.

*White & Case* [*Dudley Miller* and *Webster Sandford* of counsel], for the trustee, petitioner.

*Walker & Austin* [*Charles C. Austin* and *Thomas G. Prioleau* of counsel], for Frank Jay Gould, respondent.

*Gillespie & O'Connor* [*George J. Gillespie* and *William F. Delaney* of counsel], for Kingdon Gould, respondent.

*Charles A. Roberts*, for Marjorie G. Drexel, respondent.

*James A. O'Gorman, Jr.*, for Gloria Gould Barker, respondent.

*Philip J. Dunn*, special guardian for Guinevere Gould, infant.

*Larkin, Rathbone & Perry* [*Hersee Egginton, John M. Perry* and *Douglas F. Thompson* of counsel], for George Sinclair Brodrick and Jane Sinclair Brodrick, respondents.

*De Forest & Elder* [*Louis Kaminar* of counsel], for Finley J. Shepard and Charles C. Huitt, as executors, etc., of Helen G. Shepard, deceased, respondents.

*Dean, King, Smith & Taylor* [*David H. Taylor* of counsel], for Eileen Beresford O'Brien, Moya Beresford Bellew and George Beresford and for Howard Gould and Frank M. Gould, as remainder-men of the trust for the benefit of Helen G. Shepard, under the last will and testament of Jay Gould, respondents.

*Stanchfield & Levy* [*J. Arthur Leve* of counsel], for George J. Gould, respondent.

*Mesdames O'Crowley & McDannel*, for Anna Gould, Duchesse de Talleyrand, respondent.

Otto A. Hack, for James C. B. Millard and the Chase National Bank, as trustees under an indenture made by Anne Gould Elsbury and Eleanor Gould Stevens, and for James C. B. Millard, as ancillary guardian of respondents Jay Gould, Jr., Eleanor Gould Stevens and Anne Gould Elsbury.

Robert B. Knowles, for the Chase National Bank, Carroll Livingston Wainwright and Otto A. Hack, as general guardians of Caroline de Peyster Wainwright, Stuyvesant Wainwright, 2d, and Carroll Livingston Wainwright, Jr., respondents.

FOLEY, S. This proceeding is brought for the judicial settlement of the account of the trustees. The specific trust covered by the account constituted one of the residuary trusts created for the respective lives of the six children who survived their father, Jay Gould. The life beneficiary of the trust here involved was his daughter, Mrs. Helen Gould Shepard. She died on December 21, 1938. Under the terms of the will, upon her death, the principal of the trust was directed to be paid over to her issue, with power of appointment granted to her to allocate the shares among that class. In the event that she died without issue, the testator provided that the principal of the particular trust was to be paid over and conveyed " to my surviving children and to the issue of any deceased child share and share alike per stirpes and not per capita."

Mrs. Shepard left no issue. Her brother, George J. Gould, died in 1923. He was survived by seven children born of his first marriage and three children born of his second marriage to Guinevere Sinclair Gould. The latter group are referred to hereinafter as the Sinclair children. They were born out of wedlock, but were legitimatized by the subsequent marriage of their parents under the sanction of the statutes of New Jersey, where Mr. Gould was domiciled, and under the law of New York, which was the legal residence of the testator here. That legitimization, however, was not conclusive on the interpretation of Jay Gould's intent as expressed in his will. The question to be determined is whether the Sinclair children are included within the word " issue " and whether they are entitled to share in the remainder of the fund. Three specific issues are raised by the pleadings and the evidence:

1. Whether certain judgments of the Supreme Court of New York county made in the years 1925 and 1927 are res judicata and conclusive against the rights of the Sinclair children to participate in the distribution.

2. Whether a formal agreement of settlement approved in that litigation by our Supreme Court and separately by the Chancery Court of New Jersey, whereby the Sinclair children received sub-

stantial pecuniary benefits, constitutes an estoppel against them and a bar to their right to share in the fund.

3. Whether independently of the effectiveness of the plea of *res judicata* and the plea of estoppel and the bar resulting from the settlement agreement, they were intended by the testator to be members of the class of beneficiaries generally described as " issue " in the will.

The solution of these questions is relatively simple. It has been complicated not by the difficulty of the legal questions involved, but, perhaps, by the size of the trust fund which approximates twelve million dollars. In any event the questions of law and the analysis of the many documents in evidence have been treated by counsel for the numerous parties in their briefs with commendable thoroughness.

*First.* The surrogate holds that the judgment of the Supreme Court made on December 16, 1925, in the action *Gould* v. *Gould* (partially reported in 126 Misc. 54) was *res judicata* and forever barred the Sinclair children from participation in any of the remainders of the residuary trusts including that dependent upon the life of Mrs. Shepard which is involved here. During the pendency of that action these three children were brought in as parties defendants upon a supplemental complaint and by supplemental process. They were infants at the time and a guardian *ad litem* was appointed to protect their interests. The suit was an administrative action in equity brought by the executors and trustees of the estate for a judicial settlement of their accounts and for a construction of the will, with a further prayer for relief that " the beneficiaries under said will be ascertained and defined." The true character of the action and the broad jurisdiction vested in the Supreme Court in its intermediate proceedings, its trial and determination were defined in the opinion of Mr. Justice Dowling in *Gould* v. *Gould* (211 App. Div. 78). Immediately after the bringing in of the children, one of the daughters of George J. Gould by his first wife raised the status of the issue of the Sinclair children by an answer to the supplemental complaint. It was asserted by her that they were not " issue " of George J. Gould within the meaning of the will of Jay Gould and that they had no interest in the estate of Jay Gould or in any of the trusts created by the will. The issues in the action were referred to a referee to hear and determine. The first referee died. Former Supreme Court Justice James A. O'Gorman was appointed in his place. In 1925 certain issues in the reference were severed and a direction made for a separate determination and separate report as to whether the Sinclair children had any interest in the share of the residuary estate set aside for the benefit

of their father George, and for a determination of further issues of law and fact involved in the judicial settlement of the accounts of the trustees of the George J. Gould trust. The order of reference also made direction as to an additional issue which is not material here, concerning whether the will and codicils of Jay Gould required the consent of certain persons to the second marriage of his son George. The severed issues were then tried. The guardian *ad litem* of the Sinclair infants was represented by a competent and experienced attorney who had been a former judicial officer in this community.

The referee rendered his opinion upon the severed issues, which was dated May 21, 1925, in which he held that the claim of the three children by the second marriage of the son George and their right to participate as remaindermen was " without merit and must be dismissed." He further reported that these Sinclair children were born out of wedlock and were not issue within the meaning of the term as employed in the will of Jay Gould. He further held that section 24 of the Domestic Relations Law legitimatizing the children by the subsequent marriage of their parents did not affect the trust created before the marriage of their parents and that these children had no interest under the will of Jay Gould. He based these conclusions upon a determination made by the Appellate Division, Second Department, in *Central Trust Co.* v. *Skillin* (154 App. Div. 227). A formal report was made by him on December 11, 1925. On December 16, 1925, a judgment on the severed issues based upon the reports of the referee with the above conclusions was signed. Thereupon, the guardian *ad litem* for the Sinclair children appealed from that judgment to the Appellate Division. Because of a compromise agreement between all of the parties which was subsequently made, the appeal was never brought on and was withdrawn by formal stipulation and order. The agreement of settlement was approved in a final judgment in the same action. The effect of the compromise agreement upon the rights of the children will be later discussed. It is sufficient to say here that the final judgment of the Supreme Court in the action which disposed of all of the issues, including the approval of the compromise, the final judicial settlement of the accounts and the directions for distribution, specifically decreed that the judgment on the severed issues made on December 16, 1925, together with the judgment of May 31, 1927, should constitute the final judgment in the action. Thereby, and regardless of the compromise, the clauses in the judgment of 1925 which excluded the Sinclair children from any right of participation in the estate were retained forever in full force and effect and became binding and conclusive upon them. (*Matter of Malloy*, 278 N. Y.

429; *Hull* v. *Hull,* 225 id. 342; *Matter of Tilden,* 98 id. 434; *Matter of Beresford,* 146 Misc. 140.)

The present contention made by the attorneys for the two adult Sinclair children and the special guardian of the infant child that the judgments were limited to a determination of a denial of any interest of the children in the specific trust established for the life of George J. Gould is overruled. If the judgments of the Supreme Court had been limited to the exclusion of these children as remaindermen of the George J. Gould trust, sufficient authority for the conclusiveness of that determination as a bar to participation in any of the other trusts with similar remainders created under the will, would be found in *Matter of Leverich* (135 Misc. 774, WINGATE, S.; affd., on opinion below, 234 App. Div. 625). In that case an adverse determination in a prior proceeding as to one of three residuary trusts participated in by the same person who sought to relitigate his rights as a remainderman, was held to be a bar against him in a subsequent proceeding involving another similar trust under the same residuary clause.

But the judgments here went far beyond any limited scope and not only excluded the children from any interest in the remainder of a specific trust, but also adjudicated that they had no " right, title or interest in or to the residuary estate of the testator Jay Gould, or any part thereof." Moreover, their further contention that the referee and the court were without power to determine their absence of interest in the whole residuary estate is likewise without foundation in law. The children were brought in as persons possibly interested in the entire estate. If their legal status as contingent remaindermen was sustained they were entitled through their guardian *ad litem* and his attorney to participate in the accounting proceeding, to file objections to the account and to assert the same form of rights which the other conceded contingent remaindermen or persons interested might litigate. It has been a long-established rule in accounting actions in the Supreme Court in equity or in accounting proceedings in the Surrogate's Court that adjudication must be had as to the proper persons entitled to participate in the action or proceeding. Where an attack is made upon the status of a claimant, trial and determination occur at the threshold of the litigation. Thereby interlopers and intruders are excluded and waste of estate funds is avoided. (*Matter of Cook,* 244 N. Y. 63; *Matter of Davis,* 182 id. 468; *Matter of Fox,* 166 App. Div. 718; *Matter of Evans,* 165 Misc. 752; *Matter of Friend,* 164 id. 373; affd., 253 App. Div. 801.)

The surrogate holds, therefore, that the judgments are *res judicata* and foreclosed forever any possibility of a contrary determination

in any subsequent action or proceeding involving the remainder interests under the will of Jay Gould. (*Hellstern* v. *Hellstern,* 279 N. Y. 327; *Matter of Malloy,* 278 id. 429; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 id. 304; *Hull* v. *Hull,* 225 id. 342; *Matter of Tilden,* 98 id. 434; *Loeb* v. *Hasslacher,* 209 App. Div. 58; *Matter of McGoughran,* 124 id. 312; *Matter of Gilford,* 155 Misc. 339; affd., 247 App. Div. 782.)

*Second.* The surrogate likewise holds that the final agreement of compromise and settlement approved in the litigation by our Supreme Court and separately by the Chancery Court of New Jersey, whereby the Sinclair children received substantial pecuniary advantages, constitutes an estoppel against them and a release and bar to their right to share in the trust fund. (*Fisher* v. *Fisher,* 253 N. Y. 260; *Matter of Cook,* 244 id. 63; *Slater* v. *Slater,* 208 App. Div. 567; affd., 240 N. Y. 557; *Minehan* v. *Hill,* 144 App. Div. 854; *Matter of Crowe,* 139 Misc. 648.) The courts have strongly favored the making of compositions in estates and after the settlement is made, if bad faith or fraud be absent, give vigorous support to its validity. In *Matter of Beresford* (146 Misc. 140) Surrogate O'BRIEN held that the compromise agreement here involved was final and conclusive as to the rights of a person interested in the estate.

It would be difficult to conceive of a more careful safeguarding of the rights of these children in the Supreme Court litigation and particularly in the steps which ultimately led to the final judgment approving the agreement of adjustment. The tentative offer of settlement was referred to the same referee who had tried the other issues in the action. He had before him all the testimony and exhibits previously received in the bitter controversy over the surcharge of the trustees. He likewise had before him the proceedings which led to his separate report excluding these children from any share in the distribution of the estate. The children were represented through their guardian *ad litem* by his attorney who had long experience in the law of estates. He recommended upon the minutes to the referee and to the Supreme Court the approval of the proposed settlement. The lengthy report of the referee indicates a most exhaustive research into the very complicated details of the settlement. The Sinclair children received under it extremely substantial pecuniary benefits. Trust funds aggregating three hundred thousand dollars were set up for them in New York and funds in a similar amount were created in New Jersey for their benefit. In addition they obtained advantages by reason of the protection of their father's estate and of *inter vivos* donations made by· him approximating at least $4,000,000. The agreement of settlement in so far as it affected the infants was approved by the

Chancery Court of New Jersey, which was their domiciliary State and the State where their father's estate was under administration. No direct attack has ever been made upon the validity of the final judgment of the Supreme Court which approved this amicable arrangement for the termination of the extended and complicated litigation. There is not the slightest indication in the record that the agreement as ultimately approved was tentative rather than final, or that it reserved any of the rights of the children as contingent remaindermen. It was merged into the final judgment. The agreement and judgment extinguished every right which the children had in the estate of Jay Gould.

*Third.* Independently of the effectiveness of the defenses of *res judicata* and the bar of estoppel and conclusiveness of the settlement agreement and the judgment entered thereon, and without indicating the slightest doubt as to the soundness of those conclusions, the surrogate holds that the Sinclair children were not intended by the testator to be included within the class of issue. If the question had been presented anew, he would have followed the same reasoning and conclusion of the referee in the Supreme Court action and held that *Central Trust Co.* v. *Skillin* (154 App. Div. 227) was sufficient authority to deny them participation in the remainders of the trusts. The intention of the testator is to be construed in the light of the statute and the decisions applicable at the time that he wrote his will and codicils. (*Matter of Waring*, 275 N. Y. 6; *Matter of Lake*, 170 Misc. 840.)

Section 24 of the Domestic Relations Law was first enacted in the year 1895. It provided for the legitimization of children born out of wedlock by the subsequent marriage of their parents. Mr. Gould's will was executed in 1885 and the three codicils on subsequent dates between 1889 and the date of his death on December 2, 1892. Under the decisions applicable at the time of the making of the testamentary instruments, the word " issue " was clearly used by the testator as comprehending legitimately born children. Illegitimate children, or even those born out of wedlock but legitimatized by a later enactment, were excluded from benefit.

The decisions construing the provisions of section 24 of the Domestic Relations Law and their application to the wills of testators made after its enactment have no application in this situation. In *Matter of Hoagland* (125 Misc. 376), where a contrary conclusion was reached, the will was executed and the children born many years after the enactment of the amendment in 1895 and after the amendment to the section made in 1899. The beneficent and liberal provisions of the statute were construed and applied in my decision and the facts specifically distinguished

from those in *Central Trust Co. v. Skillin (supra)*. *Matter of Sheffer* (139 Misc. 519) is likewise not applicable here for similar reasons. None of the other authorities cited by counsel for the adult children and the special guardian of the infant child has any application to the circumstances here.

The Sinclair children were never included in the " nomenclature or vocabulary of the testator " (*Central Trust Co. v. Skillin, supra*), and were excluded as objects of his bounty.

Submit decree in accordance with this decision. ]