In the Matter of the Estate of DOROTHY SCOTT VAN HOESEN, Deceased.

Surrogate's Court, Monroe County, May 15, 1934.

*MacFarlane, Harris & Goldman* [*Thomas A. Kelly* of counsel], for petitioner.

FEELY, S. Among the problems brought up by the depression is that of a legatee in an unconditional legacy, who is in great distress near the end of the period for which the possession has been postponed — as to where the legacy, giving presently to the legatee personally a sum of money, directs it to be held for the legatee until the latter reaches majority, or the age of twenty-five,

but without any remainder, or any substitute provision being made to meet the case if the legatee do not live so long. There being no words that plainly indicate the legatee was not to own the legacy if the suggested age were not reached, and there being no residual provisions whatsoever in the will, the rule is to regard such legatee as having become the owner of the property at the death of the testator, with the possession only, or the enjoyment thereof deferred until the suggested age; so that if the legatee should die before arriving at the age mentioned, the legacy would pass to the legatee's own heirs, legatees or assigns. (David's N. Y. Law of Wills, §§ 896, 937, 1004.)

In the instant case the legatee is a trained nurse, unmarried, in her twenty-second year, seriously ill in a mountain sanatorium, and in great need of more than income from the legacy that is to be paid her when she becomes twenty-five. The paradox is that if she should die in the next three years — perhaps just because she could not presently use this money — still she now legally can say, by her last will, who shall enjoy it after her death.

Considering this case as a simple legacy, no difficulty is encountered, even though the plan contemplates a power in the executor to " hold " the property for a time. Such direction to " hold " money for a time is also one of the features of a trust. If the mechanism used to make such gift be a trust, then not all of our jurisdictions follow the rule in England and in Canada that permits an acceleration of the deferred enjoyment. (37 A. L. R. 1423.) The American jurisdictions, when unhampered by statute, emphasize the testator's intention (Id.); and some read such statutes very liberally to that end, and frequently with inhumane results.

In the economic conditions that existed here over a century ago, our New York statutes laid down the exclusive rules as to trusts, properly so called; and those rules, in the main, govern us in the greatly different conditions of today. Active trusts were distinguished from " dry " or passive trusts, for the purpose of putting the title in the real owner; and the active trusts, restricted to four defined purposes, were distinguished from mere powers in trust, for the purpose of putting the legal title in the trustee as such. The third in the original four was the support or spendthrift trust. This was defined as a trust to receive income and to apply it to the use of a person for a time; and in the original definition of 1829 this purpose was further specified to be for the " education and support " of a " minor," a " married woman," or a " lunatic or spendthrift." (R. S. 1829, pt. 2, chap. 1, tit. 2, art. 2, § 55; 1 R. S. 728, and Laws of 1830, chap. 320, § 10.) In 1830 these express qualifications were omitted from the definition, which for the ensuing century has

been formulated thus: a trust " 3. To receive the rents and profits of real property, and apply them to the use of any person, during the life of that person, or for any shorter term, subject to the provisions of law relating thereto." (Real Prop. Law, § 96.)

The revisers' notes make it plain they did not intend to change the pre-existing law of 1829. In an endeavor only to condense it, they appear to have relied on the well-known distinction between the words " paying over to " a person — implying the recipient was quite able to handle the money himself for his own needs or pleasure — and the words " to apply it to the use of any person " — implying the lack of such ability, as they did in the original context of 1829 — was a distinction sufficient to make the phrase, " to apply it to the use of any " one, indicate, by itself, the amendment of 1830 was only a condensation that was expressly intended to continue the application of the statute of 1829 to the original purpose of insuring the continuous protection of certain more or less self-helpless individuals, rather than to extend the section to all trusts " to receive income and to apply it to the use of any person " whomsoever. The particular protection was continuous, because the revisers also continued the companion statute that rendered the presently beneficial interest or " income " under that particular class of spendthrift trusts inalienable by the beneficiary (*infra*), or by the trustee (See Real Prop. Law, § 105), because the intended protection might be frustrated if such parties could come together, after the death of the creator of the trust, and wind up the trust at once. (23 L. R. A. [N. S.] 526; Ann. Cas. 1918E, p. 1216.) This section, rendering the " income " of such trusts inalienable, has been expressed, for the last thirty years, in its first form, that is to say: " the right of the beneficiary to enforce performance of a trust to receive income of personal property, and to apply it to the use of a person, cannot be transferred by assignment or otherwise.

" But the right and interest of the beneficiary of any other trust in personal property may be transferred." (Pers. Prop. Law, § 15.)

This original plan of making indestructible only the trusts to receive income and to apply it to the use of infants, *femes covert*, lunatics or spendthrifts, left it possible for a testator to control a like trust for others by the express provisions of his last will; but this privilege was soon taken from testators as the result of a long contest as to whether the words " apply to the use of any person," conveyed a meaning distinct from the words " to pay over to " any person. The advocates of a strict construction lost out when it was finally held, by an almost evenly divided court in *Leggett* v. *Perkins* ([1849] 2 N. Y. 297), that those two phrases meant one

and the same thing, to pay over generally. In passing, it is noteworthy now that in the course of those decisions, the judges, in a case cited in *Leggett* v. *Perkins*, " were twice equally divided in opinion on this question" (*Leggett* v. *Perkins, supra,* at p. 328); and that in the case last mentioned one of the last four went over to the other side, anent which BRONSON, J., notes (2 N. Y. at p. 329): " But as my brother CADY surrenders his own opinion to the supposed authority of *Parks* v. *Parks,* there is a majority in favor of affirmance. And thus it happens that a great question which has been litigated more than fifteen years, is at last settled by a single vote, and that vote governed by a supposed decision which I verily believe was never made."

The result of this ruling was to make every trust to receive income and either " apply it to the use of " or " pay " it directly to any person, indestructible, regardless of the capacity of the beneficiary, notwithstanding this resulted in the accomplishment of a " purpose which was never contemplated by the Revisers " (Walsh, Future Estates in N. Y., p. 146). So, from 1849 on, this ruling " compelled "— as Professor Walsh well characterizes the result — and forced every testator either to use an indestructible trust, or none at all. This compulsion seems to unduly stress a supposed intention in the mind of testator — often very incompletely expressed even where it exists — that the trust should run its course, to the very end of its time period, regardless of what might happen meantime to the beneficiary, or the property itself. The statutes interrupted the accumulation of income during minority, when needed by the beneficiary. Now, these legacies, deferring only enjoyment of property already vested in the legatee, without remainder or substitute, sometimes need interruption also. At one time such an attempt was made to remedy the situation caused by these trusts that had no remainder over, or one that had apparently merged. In 1893 there was interpolated into this statute, rendering income inalienable, a short-lived provision that where the beneficiary was entitled to the " remainder," in whole or part, he might release his interest in the rents and profits, and the trust would then end, by merger in the remainder. (See *Connolly* v. *Connolly,* 122 App. Div. 492.) This interpolation was repealed, and for the last thirty years the statutes have stood as above quoted. Meantime the incongruity persisted; and now the wide modern expansion of trusts, in every way, adds emphasis to the yet unheeded recommendation made in 1907 by the Board of Statutory Consolidation that " the Revised Statutes should be restored, as it is more consonant with the scheme of the Article on Uses and Trusts." (See McKinney, Real Prop. Law, vol. 49,

pp. 137, 138.) Today public policy should require of those who really mean to use this inflexible form of indestructible trust that they should express in unmistakable terms' their intention so to do, and should follow closely the statutes and the decisions in creating it. It is difficult to reconcile with any but a spendthrift trust — if indeed with that — the literalism of the ruling that even the testator himself in creating a spendthrift or support trust, cannot expressly empower the beneficiary to transfer his beneficial interest in the income; whereas the creator of a trust may, in his lifetime, revoke the trust, with the consent of all concerned therein, under section 23 of the Personal Property Law.

It has also been held that the " power to appoint in fee by deed or will in the beneficiary does not give him an absolute estate for the purposes of the rule, as it would at common law." (Walsh, Future Estates in N. Y., p. 146, citing *Farmers' Loan & Trust Co.* v. *Kip*, 192 N. Y. 266.) The professor also cites (p. 147) cases holding that the " other trusts," that are destructible, or their benefits alienable, include a legacy in fixed amounts under a trust, payable in installments, but not out of income; and also a legacy of an annuity payable out of both principal and income; and also a trust for comfortable support, not necessarily limited to income. Apparently, any interest in the principal is held to take the case out of the indestructible class.

This anomalous state of the law must be borne in mind in reading the home-made will now before this court. It was dated in 1927, and made by a mother for the benefit mainly of an only child, a daughter then fourteen years of age. The " trust " was set up in 1928, with $7,749.13 on hand. The decree of judicial settlement construed the will, in broad terms, as a trust, but mainly with reference to the then pressing need, the interruption of accumulating income during the minority of the daughter. The will, aside from nominating the Security Trust Company as executor, with power of sale, made other provisions of which the only ones now pertinent are these:

"*Third*. As to my husband  *  *  *  he is well provided for as he has a position paying salary in time of sickness and an old age pension, so I do not think it befitting I should take away from our daughter Rosamunde.  *  *  *

" *Sixth*. Everything else to my dearly beloved daughter Rosamunde, to be held in trust for her until she is twenty-five (25) years of age. The trust fund to be administered by The Security Trust Company of Rochester, N. Y.

" I desire both principal and income held in trust unless at some time they consider [the husband] unable to provide for Rosamunde,

then they shall advance funds from income only, for her keeping; also if they see fit to loan Rosamunde money for her college expenses, but she or her Father are to pay it back as the Security Trust Company sees fit."

*First*, is this a trust, as distinct from a power?   Being a holograph, this will, and especially the word " trust," is not to be read technically.   (*Matter of Mahlstedt*, 140 Misc. 245, 250.)   Next, the gift is directly to the daughter, not to the trust company (*Matter of Mahlstedt, supra*), nor " in trust."   The company is named executor only, not as " trustee."   Then there is no direction either to receive or collect income, nor to apply it to the use of the daughter for a time, nor to pay it over to her.   (*Matter of Mahlstedt, supra.*) The mere omission of those statutory words, " to receive income and apply it to the use " of one, has been held to take the case out of the class of indestructible trusts (*Matter of Gambrill*, 135 Misc. 516, 520; *Matter of Grauer*, 146 id. 469); and their presence in a will, in conflict with an outright legacy, does not alone cut down the latter, nor make an indestructible trust, with income inalienable (*Matter of Stanton*, 107 Misc. 326), but amounts rather to a mere power.   (*Matter of Logan*, 128 Misc. 505.)   Moreover, the deferred payment of one lump sum of both principal and accumulated income to the legatee·was mainly intended by this testatrix.   In her plan, income for support was a minor consideration; and the material factor of the beneficiary having interim rights in and to the principal is present.

This plan, therefore, failing to create a trust, properly so called, cannot be set up on its feet as a trust merely by the presence in it of active duties and powers; for most powers in trust are active any way.   The active duties this will empowers the executor " trust company " to perform are to " advance funds from income only," and to " loan money " for college tuition.   This term " money," in a will that has no residuary provision, clearly can include principal.   (David's N. Y. Law of Wills, § 759.)   If " money " were loaned for tuition, it is strangely. required to be paid back, whereas the contrary would be the case in the case of an educational trust; and similarly in a support trust one would not ordinarily speak of " advancing " funds from income before it was due.   These are duties any executor or guardian, or any donee of a power, might well discharge in case of an unconditional legacy like this, deferring merely enjoyment until both principal and income could be paid in one lump sum to the legatee, without any remainder over, either in the meantime or at the end of the period, in case the legatee should die.   Even if we regard this as more than a legacy, and rather as a trust, the beneficiary owns the principal

as of the date of the testator's death, and can meantime dispose of it by will. (Cf. *Matter of Grauer, supra; Cooke* v. *Platt,* 98 N. Y. 35.) It is true income could be advanced for the "keeping" of the daughter; but there is interposed the condition precedent that her father should first be "considered * * * unable to provide for Rosamunde," out of the store wherewithal the will declares he was well provided.

Neither in form, therefore, nor in purpose, can this legacy be said to be in the spendthrift class, as a support legacy; nor in the class of indestructible trusts, unless the language, used by one unskilled in the law, be stretched to a point that will satisfy technicalities to the grievous injury of the real owner of this fund. This court has already broken in on the minority income; and should now resort to its equity powers to prevent the owner of this "money" from perishing miserably in the midst of plenty. To construe otherwise, would be to adopt a strict literal or technical reading that was never intended by this testatrix.

The direction in this will, that the money given the daughter be held for her till she reach twenty-five, must be regarded as an advisory suggestion for the exercise of the power which is not to be stressed to the point of being regarded as an absolute, inflexible requirement, nor as a condition, nor as a trust duty, in the legal sense of those terms. The father having joined in the petition, the executor will be authorized by the decree of this court to expend for the needs of the legatee such sums as may, from time to time, be necessary, out of principal, as the income may prove insufficient.

This conclusion has been reached not without the careful consideration due the two cases decided last fall by the two surrogates of New York county (*Matter of Bendick,* 149 Misc. 415, and *Matter of Solomon,* Id. 551). In each the succinct report seems to indicate there was a bequest or devise "in trust" to trustees, rather than to the true legatee, and the wills appear to have been drawn somewhat better than the one now in hand. From the reports it cannot be gathered whether in either will there was present the statutory formula to receive income and apply or pay it to the beneficiary. In the *Benedick* case there appears the factor of interim rights in the principal, because there was a possible exercise of discretion on the part of the trustee, in that although he was to hold the fund till the beneficiary, now eighteen, became twenty-five, when the trust should end — apparently without remainder over — still the trustee might pay over to the beneficiary at his majority the whole or any part of the fund itself. This corpus belonged to him from the date of the testator's death, by an indefeasible title. As for income, which is the crux of an indestructible

trust, the will seems silent, save as to an illegal accumulation. This youth petitioned, with the trustee's consent, for $500 semi-annually, out of the fund and accumulated interest, for college tuition. The accumulation is not discussed. It is the opposite of the periodic payment that is characteristic of a support trust.

In the *Solomon* case the trust, apparently, was to pay the widow half the income for her life, and a quarter each to the son and the daughter. Upon the son becoming twenty-five, a quarter of the principal was to be paid to him. On the death of the widow, the two children were to take her sometime share of income. No other residual provisions appear in this will. This entire corpus also must have become indefeasibly the property of these three persons at the death of this testator. The ruling was that " sufficient facts are shown to warrant the exercise by the court of its discretion in favor of granting the application, if the power resides in the court to do so." In each case the application was denied, apparently on the theory that these were in the class of indestructible trusts, in the sense that the income from them is inalienable either by the trustee or by the beneficiary.

Besides the legal differences pointed out above, the factual background in each of those cases is different from that of the case now in hand; and the same can be said of the relative differences between this and the supporting cases cited in those two rulings. From the report of them I have been unable to perceive that any of those rulings either govern or should control the case at bar.

The line of demarcation, however, is not so clear when one comes to consider another application, like this Van Hoesen petition, that is also now before this court, under a somewhat less badly drafted will, made by Arthur D. Rees in 1921. He had a wife and two daughters, and an estate of about $8,000; and he gave the entire residue of his estate " to my executor hereinafter named, in trust, nevertheless, to convert the same into money, and to deposit one fifth of such money for the benefit of each of my grandchildren [naming them], and to pay over the interest on their share to each of my grandchildren every six months, and the principal of such share to be paid over to each of my said grandchildren when he or she arrives at the age of twenty-one years." There are no other material dispositive provisions in this Rees will. There is no remainder over, either general or special. One of those grandchildren is now nineteen, and in great need of more than the interest on the deposit of less than $1,000 made for him on the judicial settlement. This youth today undoubtedly owns an indefeasible interest in that " deposit " itself, which he has a legal right to bequeath to others (See *Radley* v. *Kuhn*, 97 N. Y. 26, 36); and as

his expectancy is not plainly conditioned on his death at any time, he can assign or discount it for these "necessaries" now, despite the fact that he is still under age; but as to the "interest" or income, the trust apparently must carry on till this young man either becomes twenty-one, or would have reached that age, if he should sooner die. Yet all this testator intended to do was to bestow on an infant grandchild a gift of money, partly presently payable, despite the fact the legatee was an infant, for the direction is to pay to the infant the interest semi-annually. This was in no sense a spendthrift or a support legacy for the interest was never over a dollar a week; and the infant's parents are living. If this youth of nineteen must suffer because he does not succeed in availing himself of his property in the corpus, by assignment or discount, the fault lies with the testator who did not know that a trustee could not do what a general guardian of property could do, in the same circumstances, had the testator chosen to create a testamentary guardianship, rather than a trust; because the public policy of a century ago, as interpreted by the "one-man" decision in *Leggett* v. *Perkins,* is still allowed to govern the vastly different economic conditions of this day and age.

Enter a decree on the Van Hoesen petition in accord with this decision.