In the Matter of the Estate of BEATRICE WILSON GARSON, Deceased.

Surrogate's Court, Monroe County, January 5, 1937.

*Edward B. Schulkind,* for Charles Garson, Jr.

*S. Albert Lowenstein,* for the executors.

*Fred J. Slater,* special guardian.

FEELY, S. Upon the death of this testatrix on December 31, 1935, her last will and testament, dated October 31, 1935, became effective, whereby one-third of her estate was to be held in trust for the benefit of her husband during his life; and the remaining two-thirds in trust for the benefit of her infant daughter until the latter became twenty-five years of age. The husband filed a notice of his election to take against the will; and the question presented is as to how much, if any, of the third of the decedent's net estate in trust for him he is entitled to take outright under his election. He claims to be entitled to take one-third of the net estate as if there had been an intestacy, on the ground that the proffered trust does not comply with the law in respect of the powers which the will gives this trustee. In that respect there have been changes in the law since this testator died; and the question is, which rule is applicable.

The will provides as follows: In paragraph 9, subdivision 1, that the executors shall not be required to furnish any bond or

security for the proper discharge of their duties; in paragraph 9, subdivision 2, that each executor and trustee shall be chargeable only with his own respective receipts; and in paragraph 9, subdivision 3, that none of the executors or trustees shall be liable for any loss or damage which may happen in the execution of his duties without his respective willful default. In paragraph 10, subdivision 1, the trustees are authorized to treat the separate trust funds as one common fund; in paragraph 10, subdivision 2, they are authorized to keep the estate in the form in which it might be at the time of the decedent's death, whether such form be a legal investment or not; and in paragraph 10, subdivision 3, the trustees are authorized to continue and renew all investments; and in paragraph 10, subdivision 4, that the trustees shall not be held accountable for any failure to obtain interest on property in which they may invest; and by paragraph 10, subdivision 5, their reinvestments are restricted to " legals." By the eleventh paragraph the trustees are authorized to sell decedent's property (including any property acquired after her death) on credit or otherwise, with power to accept purchase-money mortgage for the whole or any part of the price; and by paragraph 11, subdivision 2, the trustees may mortgage or improve any realty.

When the testatrix died there vested in her surviving husband the right to elect to take his intestate share, as against such an alternative as that outlined above, under the then prevailing interpretation of the statute. (*Matter of Curley*, 151 Misc. 664; 245 App. Div. 255; affd. in 1935, without opinion, 269 N. Y. 504.) The Legislature did, indeed, later see fit to modify the law as that ruling had left it; and the modification was not expressly retroactive, but rather prospective in form; so that the alternative offered by this will is not helped out by the enactment of new paragraph (h) to subdivision 1 of section 18 of the Decedent Estate Law (Laws of 1936, chap. 234), which is not retrospective (*Matter of Bommer*, 159 Misc. 511, 517), although it must be read in connection with another corrective enactment whereby new section 125 was added to the same statute at the same session, and is expressly made prospective only.

The original statute, enacted in 1929, directed the courts to construe its provisions liberally; and may be, within certain bounds, the new enactments of 1936 were meant to " reverse " the appellate courts in *Matter of Curley* and to specify what the Legislature meant implicitly in 1929 by a " liberal construction; " so that these new enactments of 1936 might be said to be restrictions on extremes of liberality rather than a grant in 1936 of powers which the court did not already possess under the act of 1929 and its command

that its terms be liberally construed; still the will in the case at bar, being loaded down, as it is, with "ingeniously contrived clauses, the full legal effect of which are. seldom appreciated at the time of the execution of the wills containing them" (see note to new section 125), and constitute a "potential menace" to the beneficiary (Id.), would have to be substantially reconstructed in that portion which deals with the trustee's powers, if the court now were to try to exercise the broad powers new subdivision (h) declares it to possess to disregard such clauses and "to make such other direction consistent with the provisions and purposes of this section as the court may deem necessary for the protection of the surviving spouse."

The conclusion is inevitable that in the circumstances of this case the surviving husband is entitled to reject the proffered alternative and to demand one-third of the net estate as if there had been intestacy.

2. The remaining question is the intention of the language used in the will in reference to the person who is to. handle the money. The draftsman of this will manifested in subdivision b of paragraph fourth a clear understanding of the distinction in direction to a trustee between one to "apply" the money to the use of the beneficiary and one to "pay over" to that person; because during the minority of this beneficiary the trustees are directed to "apply the net income to the maintenance, use, education, support and comfort," whereas the trustees are to "pay" it to her "during so much of her life as she shall be over the age of twenty-one years and under the age of twenty-five;" and at the latter time all is to be paid over to her. ·

Whatever doubt may have been occasioned by the strange obliteration of this distinction in construing the Statute on Trusts (*Matter of Ungrich*, 201 N. Y. 415, 419; and see *Matter of Van Hoesen*, 151 Misc. 617, 619, 620), there can now be no doubt that, in respect of the intention of a testator who uses those phrases intelligently, the direction to "apply" requires the trustee himself to see to the application of the money to the purpose intended without intervention of the guardian of the property of the beneficiary. (*New York Trust Co.* v. *Black* 178 App. Div. 4; affd. without opinion, 223 N. Y. 703; *Matter of Connolly*, 71 Misc. 388; *Matter of Flood*, 127 id. 797; *Matter of Smidt*, 135 id. 578; *Matter of Quinlan*, 147 id. 483; *Matter of Rosenthal*, 155 id. 295.)

The difficulty arises here out of the fact that in a later paragraph, the seventh, authorizing invasion of principal whenever annual income should, in the opinion of the trustees, "as sole judges," be insufficient for the purposes aforesaid, the trustees are directed to draw upon the principal and "to pay the same

to my said daughter in addition to the income provided for" as aforesaid.

Reading both provisions together, and considering that the invasion rested solely in the judgment of the trustees, it seems there is no reason to gather that the testatrix meant the invasion contribution or portion to be handled in any other manner than she had directed the income itself to be handled; for her main object was the comfort of her daughter, to be served, while she was a minor, under the hands of the trustees; but when she had reached majority the application of the money was to be left to her own judgment. The word " pay " in the seventh paragraph is used in a generic sense of " expend, or lay out; " and is not inconsistent with the scheme of the will; nor is it a limitation on the foregoing provisions of paragraph fourth, in respect to " paying " as distinct from " applying."

3. An incidental question concerns the first sentence of the seventh paragraph, which uses a twelve-month period in or over which to measure the sufficiency of income. This must have intended that the trustees could, pending that period and without awaiting its termination, estimate the probable yield of their corpus investment, and in proper circumstances invade the principal before that period had expired.

On notice or voluntary appearance submit for signature and entry a decree in accord with this decision, with provision for insertion of such allowances as may then be made.