In the Matter of the Estate of CHARLES HAYDEN, Deceased.

Surrogate's Court, New York County, November 17, 1939.

*Chadbourne, Wallace, Parke & Whiteside* [*William M. Parke, Leonard P. Moore* and *Jule E. Stocker* of counsel], and *Woolman & Woolman* and *Robert G. Starr* [*Robert G. Starr* and *Aaron B. Coleman* of counsel], for the petitioners Ronaghan and Daveler.

*Charles F. Gehrmann*, for the petitioner Doubleday.

*Chadbourne, Hunt, Jaeckel & Brown* [*Lawrence C. Moore* of counsel], for Countess Anita Stewart de Braganca, life beneficiary.

*Hughes, Richards, Hubbard & Ewing* [*Charles E. Hughes, Jr., Oscar R. Ewing* and *Richard W. Hogue, Jr.,* of counsel], for the Charles Hayden Foundation, remainderman.

*Baldwin, Todd & Young* [*Samuel M. Lane* of counsel], for Carleton C. Lane, claimant.

*John J. Bennett, Jr., Attorney-General*, for the State of New York.

*Hirsh, Newman, Reass & Becker* [*J. W. Newman* of counsel], for William Fox, claimant.

*Wright, Gordon, Zachry & Parlin* [*Charles C. Parlin* and *Robert M. Bozemann* of counsel], for the Edgar A. Doubleday, claimant.

*Proskauer, Rose & Paskus*, for the Mount Sinai Hospital.

*Miller, Owen, Otis & Bailly* and *Stanchfield & Levy*, for Byrne E. Baldwin and others, individually and as members of the limited partnership of Hayden, Stone & Company.

*David L. Podell* and *Hayes, Podell & Shulman* [*Mortimer Hays* of counsel], for James V. Martin, claimant.

*Hallam M. Richardson*, for Gene McCann, claimant.

*Alger, Peck & Grafton* [*F. H. Rohlfs* of counsel], for Edmund T. Duval, claimant.

*Larkin, Rathbone & Perry* [*Albert B. Maginnes* and *Douglas S. Thompson* of counsel], for Charles P. Gehrmann, claimant.

*Anthony J. Romagna*, for Pennell N. Aborn, as guardian and committee of Ernest Saeger, beneficiary.

*Conboy, Hewitt, O'Brien & Boardman* [*Louis C. Haggerty* of counsel], for William J. Brannan, claimant.

*Clarke & Allen* [*Walter C. Elliott* of counsel], for J. Harris Warthman, as trustee, under section 77B of the Bankruptcy Act, of the estate of La France Industries.

*Rosston & Hart*, for George Brussel, Jr., as trustee for Edwin Hort and others, claimant.

*Simon H. Rifkind* [*William H. Button, Herbert L. Cohen*, and *Sidney R. Nussenfeld* of counsel], for Daniel O. Hastings, as trustee of the Standard Gas and Electric Company, debtor.

*Anderson, Gasser, Ferriss & Anderson* [*William H. Hayes* of counsel], for Anna B. Ronaghan and James P. Ronaghan, as executor, etc., of Arthur J. Ronaghan, deceased.

*Selven F. Feinschreiber*, for Walter J. Rich, claimant.

*Satterlee & Canfield* [*Evelyn P. Luquer* of counsel], for the Commercial National Bank and Trust Company, as executor, etc., of Richard F. Hoyt, deceased.

FOLEY, S.   There is presented for determination in this proceeding brought to settle the account of the executors and trustees the interesting question of whether one of the accounting parties, Edgar A. Doubleday, in the lifetime of the testator agreed to accept the sum of $100,000 as his compensation as fiduciary and to waive his statutory commissions.   The gross estate left by Mr. Hayden approximates $54,000,000, and the controversy becomes important because of the fact that the difference between the fixed amount alleged to have been agreed to and the statutory commissions presently claimed by Mr. Doubleday, aggregates about $931,000.

Mr. Hayden died on January 8, 1937.   His will and codicil were executed on August 19, 1935.   He appointed as his executors and trustees Mr. Doubleday and Erle V. Daveler, who were his business associates in the investment banking firm of Hayden, Stone & Company.   He also named Arthur J. Ronaghan who had been his personal attorney for several years.

The instrument, which it is claimed forms the basis of the waiver and agreement on the part of Mr. Doubleday to accept the fixed amount and to forego the statutory commissions, is dated September 3, 1935, approximately two weeks after the execution of the will and codicil.   All three executors qualified in their separate executorial and trust capacities.   Mr. Ronaghan died shortly before the trial of the present controversy.   Both he and Mr. Daveler accepted as binding the promise they had made and they, with the residuary legatee, a charitable corporation known as the Charles Hayden Foundation, vigorously opposed the claim of Mr. Doubleday for statutory compensation.

Various questions have been raised by the contentions of the opposing parties.   They are: Was the agreement to waive actually made?   Was it valid and effective, and particularly was it based upon valuable consideration?   Is such an agreement void as contrary to public policy because of the authorities which hold that a

fiduciary may not assign his compensation? If the agreement was actually made, may Mr. Doubleday elect to renounce the designated amount and thereby obtain commissions at the rate fixed by section 285 of the Surrogate's Court Act upon the same theory that a legacy to an executor in lieu of commissions may be renounced under the terms of that section by the filing of an instrument of election within four months after the issuance of letters testamentary?

The surrogate finds that the agreement was made and that it is valid. The facts surrounding its execution have been developed in the evidence. They are of extreme importance since the intention of the parties " must be gathered from all the surrounding circumstances and the writings interpreted according to the purpose which the parties had in mind." (CRANE, J., *Matter of Cook*, 244 N. Y. 63, 69.) Shortly after the execution of the will and codicil by Mr. Hayden, Mr. Ronaghan had a conversation with Mr. Doubleday. Ronaghan raised the question whether Mr. Hayden appreciated the large amount of the statutory commissions which would be awarded to the three fiduciaries. A later conference took place on September 3, 1935. Ronaghan appears to have been most painstaking and conscientious in his loyalty to the testator. He had drawn the instrument of waiver dated the same day and showed it to Doubleday. He had already signed it and asked Doubleday to sign it. The paper reads as follows:

*" September 3rd, 1935.*

" Mr. CHARLES HAYDEN,
25 Broad Street,
New York City.
" Dear Mr. HAYDEN:

" We are advised that you are about to execute your Will, and that you intend naming us as Executors and Trustees thereof. We take this occasion to thank you for the confidence you are about to repose in us and for the honor about to be conferred.

" In consideration of your naming us Executors of and Trustees under your Will, and in view of the fact that the bulk of your fortune is going to charity, we hereby waive and renounce our rights to the usual statutory commissions as Executors and Trustees and suggest that you state the sum at the foot of the duplicate of this letter which each of us as Executor and Trustee shall be entitled to receive.

" Faithfully yours,
" ARTHUR J. RONAGHAN.
" EDGAR A. DOUBLEDAY.
" ERLE V. DAVELER.

" In accordance with your suggestion, I hereby name the sum of $100,000.— which each Executor and Trustee under my Will shall be entitled to receive.

" CHARLES HAYDEN."

Doubleday testified that the addendum which was signed by the testator with the fixation of the amount did not appear upon the instrument at the time he signed it on September third. There was some discussion between the two as to what amount Mr. Hayden would fix in lieu of compensation. On the same day Ronaghan took the letter to Mr. Hayden and the additional matter at the end was apparently inserted and the figures $100,000 written in the appropriate blank space by Mr. Hayden and the instrument signed by him. Later on the same day Ronaghan exhibited the instrument to Doubleday and made a report to him of the conversation which he had at the time of its signing by Mr. Hayden. Doubleday claims that he informed Ronaghan that he rejected the amount which appeared in the instrument. By his own testimony, however, it appears that if he had made such protest to Ronaghan he was careful not to convey it to Mr. Hayden, for it is undisputed by his own admissions that he never discussed the will or the question of commissions at any time thereafter with Mr. Hayden.

Various attacks are made by counsel for the executor seeking commissions on the validity of this instrument as an effective waiver. All of them are overruled. I hold it to be valid and enforcible and binding upon the parties who signed it. It is a well-established rule of the law of estates that a potental next of kin or other party possibly interested in an estate may, by a valid agreement made in the lifetime of the testator, waive any benefit which might have accrued to him after the death of the person whose estate is affected. (*Matter of Cook*, 244 N. Y. 63; *Matter of Moore*, 165 Misc. 683; affd., 254 App. Div. 856; affd., 280 N. Y. 733.) Such agreements are sustained by the courts when based upon consideration, when made in good faith and not against public policy and when free from imposition or fraud. In *Matter of Cook* (*supra*) certain potential heirs and next of kin of an elderly woman agreed by an interchange of letters and receipts, in consideration of certain gifts made to them, not to contest the will. Despite their agreement they sought, after her death, to procure a denial of probate. Judge CRANE, in the opinion of the court, wrote that there never was any question as to the validity of agreements made by persons interested in an estate *after* death. He further held that agreements made *before* death should be sustained for the same logical reasons which bind the parties to their agreements in

equity. "Every consideration of justice would demand that such an agreement, fairly and openly made while the testatrix was alive, and relied upon in disposing of her property, should be supported." I see no distinction between a valid agreement to surrender a right of a potential next of kin and a similar waiver or agreement by an expectant executor as here. It has never been disputed that a fiduciary may consent after qualification to accept an amount less than the statutory compensation or even to waive any award. It is the experience of the surrogates in cases which never receive consideration in the official reports, that administrators, executors, trustees and guardians often renounce any compensation. There is no violation of public policy in this conduct. Their waiver is encouraged and approved and not proscribed by the courts. The rule is entirely different where the fiduciary assigns his commissions in advance of allowance, thereby weakening the incentive of attention to duty and continued loyalty in the administration of his trust. Such assignments are void as against public policy. (*Matter of Worthington,* 141 N. Y. 9.) In the other class of cases where compensation is waived, the action of the fiduciary is usually based upon unselfishness or sentiment and there is customarily not the slightest diminution of efficiency or devotion to the interests of the beneficiaries. "The law does not forbid gratuitous services, even in fiduciary relations, and if acts purport to be done gratuitously no claim for payment can be founded upon them at a later date." (Mr. Justice HOLMES in *McIntyre* v. *McIntyre,* 192 U. S. 116.)

In *Matter of Hopkins* (32 Hun, 618; affd., 98 N. Y. 636) there was an agreement made by the legal representatives after death to renounce commissions. The court stated that the "right to commissions may be waived by the party entitled thereto, and after such waiver he will be estopped from claiming the same. (*Matter of Cooper,* 93 N. Y. 507, and cases cited.) This the respondents have done by their contract, Exhibit A. The case shows that the estate has been settled in accordance with the provisions of that contract. Both parties have acted in reliance upon it. To allow the respondents to repudiate their contract would be to aid chicanery and dishonesty. The understanding that no commissions were to be allowed is as plain as day. * * * Courts will not permit justice and right to be thwarted by technicalities. The contract is valid and binding in and of itself, and also because all the parties have acted upon and performed it."

The general enforcibility of a waiver of commissions by a fiduciary before the death of the maker of the will is supported by recognized authorities on the law of estates. (2 Scott on Trusts, p. 1394; 4 Schouler on Wills [6th ed.], p. 2544.) In *Matter of Kaplan*

(N. Y. L. J. Feb. 25, 1936, p. 980) Mr. Surrogate DELEHANTY found that the executors had agreed in the lifetime of the testator to serve without compensation and denied commissions to them. There was no proof of any specific agreement other than a statement in the will that the executors had waived. He held further in his decision that no question of public policy was involved in the agreement of the representatives to waive any compensation.

Specific attack is made by counsel for Mr. Doubleday here on the form of the letter of September 3, 1935, particularly because of the inclusion of the first sentence in it. That sentence reads: "We are advised that you are about to execute your Will, and that you intend naming us as Executors and Trustees thereof." It is claimed that the entire instrument was intended to refer to a new will about to be drawn and that it had no application to the previous testamentary instruments which were ultimately admitted to probate. The evidence controverts this contention. More important, the claim is completely refuted by the conduct of Mr. Doubleday and by his oral and written admissions. They show that he fully understood that he was waiving commissions not only as to any prospective will, but also as to any existing testamentary paper. In this respect the remainder of the letter becomes significant. "In consideration of your naming us Executors of and Trustees under your Will, and in view of the fact that the bulk of your fortune is going to charity, we hereby waive and renounce our rights to the usual statutory commissions." These words are most expressive, for under the will just previously made they were named as executors and the residuary clause in it carried a gift of over $35,000,000 to charity. It was furthermore expressly stated in the instrument that Mr. Hayden should fix the amount that they were to receive. A construction which a party places upon a contract is always persuasive as to its meaning and effect. "Practical construction by uniform and unquestioned acts from the outset, especially when continued for a long period of time, is entitled to great, if not controlling weight, for it shows how the parties who made the contract understood it. If they do not know what they meant, who can know?" (*Carthage Tissue Paper Mills* v. *Village of Carthage*, 200 N. Y. 1, 14.)

It appears from the testimony of Mr. Doubleday that he was fully informed by Mr. Hayden as to the preparation not only of his last will but also many prior similar instruments. He was present at the execution of all but one of these documents. He is a keen and shrewd business man of long experience and particularly qualified in the handling of large financial transactions. He is not only bound in law with knowledge of the nature of the contents

of the instrument that he signed (*Matter of Stone,* 272 N. Y. 121; *Matter of Schoenewerg,* 277 id. 424), but he is also more strongly bound by his demonstrated admissions that the instrument signed by him related to the will which was admitted to probate.

There is testimony in the record given by Mr. Daveler, the coexecutor. He did not sign the instrument when the others signed it. On the very day that Mr. Hayden died and before knowledge of the death he gave his word of honor that he would sign it. He subsequently signed it after such death on January 12, 1937. I accept his version of the conversation of January 8, 1937, with Mr. Doubleday, and hold that it strongly refutes the present claims of the latter. I reject the testimony of Doubleday as to the conversations of January 8 and January 12, 1937, and accept as true the version of Mr. Daveler as to the dates and subject-matter. It is also very significant that the instrument of September 3, 1935, was delivered to Doubleday on that day and the duplicate original placed with the will, which was subsequently probated, in the safe deposit box of Mr. Hayden.

There are two documents in evidence signed by Doubleday which also conclusively refute his present claim and establish that he waived his commissions as executor under the probated will and codicil of August 19, 1935. They destroy his present claim that he intended to waive only as to a will to be executed subsequent to September 3, 1935, the date of the instrument. No person reading carefully every word of the first of these documents — his memorandum of April 20, 1937 — could fail to reach the conclusion that he regarded his prior agreement as a renunciation of his statutory compensation under any will which Mr. Hayden left whether executed before or after the agreement. It is significant too that in that memorandum he based his change of mind upon what he regarded as matters that were unforeseen at the time the testator fixed the absolute amount of compensation. Doubleday's change of mind and his anxiety to renounce the promise he had made are attempted to be explained in it by the fact that he had " greatly underestimated the complications with which this estate is beset." Occurrences subsequent to his qualification as executor and trustee and his acceptance of the trust may not justify a departure from an obligation made in honor and with legal support. It is obvious that his present contentions are based upon mere afterthought. (*Matter of Gerard,* 1 Dem. 244.) Again, strong evidence of his admissions is found in the second document described as the declaration filed in this court after the death of the testator and dated May 6, 1937. In it there is no specific repudiation of the practical construction previously applied by him to the instrument of waiver.

I find no evidence of lack of consideration which would invalidate the agreement. Persons may stipulate away their " statutory and even constitutional rights." (*Matter of Malloy*, 278 N. Y. 429; *Matter of New York, L. & W. R. R. Co.*, 98 id. 447, 453.) A waiver is a " voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim or privilege, which except for such waiver the party would have enjoyed." (*Davison* v. *Klaess*, 280 N. Y. 252; quotation from 67 C. J. 289.) It implies an election to dispense with something of value or forego some advantage which the party waiving it might at its option have demanded or insisted upon. (*Clark* v. *West*, 193 N. Y. 349.)

It was the privilege of Mr. Hayden to select Mr. Doubleday as executor or to eliminate him from the handling of the administration of his estate. There is not the slightest evidence of compulsion or pressure exerted upon Doubleday to accept the agreement for lesser compensation. By his own admission he made no protest directly to Mr. Hayden of the fixed amount of compensation. His testimony that he objected to Mr. Ronaghan is of little value from the standpoint of his credibility or the lack of it, as observed by the surrogate. In any event Mr. Ronaghan's death before the trial precluded the opportunity of hearing perhaps a different version. The failure to communicate with Mr. Hayden is significant as showing Doubleday's willingness to accept what was offered. In this connection also it should be pointed out that the will provided that the trustees, including Doubleday, should receive a " reasonable " annual compensation for the administration of the residuary trust for the Hayden Foundation. Under this clause Mr. Doubleday's salary as trustee has been fixed at the sum of $40,000 per year. Based upon his apparent age and expectancy of life he will receive from this form of compensation for his services in the estate at least the sum of $700,000, or, when added to the sum of $100,000 fixed in the agreement, a total of $800,000 of compensation in varying forms.

In the face of these substantial pecuniary rewards, it is not difficult to understand why Mr. Doubleday did not go to Mr. Hayden and cancel the agreement which he had signed. In effect, what Mr. Hayden told him was, you have agreed to act as my executor and trustee and to accept the amount of compensation which I shall fix. I have decided, pursuant to your written offer, that you shall have $100,000 and an adequate salary as trustee. If you are unwilling to act upon those terms, " the time to speak is now." (CARDOZO, Ch. J., in *Allegheny College* v. *National Chautauqua Co. Bank*, 246 N. Y. 369.) It is fruitless to speculate whether, if the protest had actually been made to Mr. Hayden, he would

have increased the designated amount or would have eliminated Doubleday as an executor by a new testamentary instrument. Doubleday's acquiescence estops him. " One who stands by and induces the belief that he assents will not thereafter be heard to complain of the act that another might have abstained from if dissent had been announced." (CARDOZO, J., in *Giles D. M. Co.* v. *Klauder-Weldon D. M. Co.*, 233 N. Y. 470, 476.)

The surrogate further overrules the contention that section 285 of the Surrogate's Court Act permits the executor to renounce a fixed outright amount and to elect to obtain statutory commissions. The instrument which Doubleday filed in this court purporting to evidence a right of election is futile and ineffective. Section 285 applies only to an election to choose between a legacy given in lieu of commissions and the statutory commissions. It does not apply to an agreement made in the lifetime of the testator to accept the lesser amount. It is well understood that when a person makes a will giving a legacy in substitution of statutory compensation the executor-legatee may choose the greater benefit between the two alternatives. The maker of the will is thus charged with knowledge of that provision of the law. The form of election under the statute is utterly different in effect from an express agreement made by the prospective executor to waive any compensation or accept a reduced amount.

The surrogate overrules the contention of counsel for Doubleday that the agreement is unenforcible because it was not signed by all of the executors before the death of Mr. Hayden. The parties were acting in their individual and several capacities without the necessity of joint action. There is not the slightest evidence that the agreement was interdependent. In the law of estates many forms of valid agreements or waivers may be made before or after the death of the owner of the estate. When so made by a single party they are binding and conclusive upon the signer. I reviewed these forms of agreements and so held in *Matter of Moore* (165 Misc. 683; affd., 254 App. Div. 856; affd., 280 N. Y. 733.)

Reliance is placed by counsel for Doubleday upon the opinion of Chief Judge CRANE in *Matter of Corn Exchange Bank Trust Co.* v. *Bankers Trust Co.* (268 N. Y. 224), in which it was stated by way of dictum that an agreement in a trust indenture *inter vivos* to accept less than the statutory commissions was ineffective against an election to take the full compensation allowed by law under the provisions of subdivision 7 of section 1548 of the Civil Practice Act. The subdivision reads as follows: " If the instrument creating the trust provides specific compensation for the services of the trustee

or trustees, no other compensation for such services shall be allowed unless the trustee or trustees, before receiving any compensation for such services, shall renounce such specific compensation by a written instrument duly acknowledged." Neither that case nor the subdivision just quoted has any application to the facts here. The issue there was whether the necessary expenses of the trustee for attorney's fees and disbursements were included within the word " compensation " as used in the deed or whether they were allowable as ordinary administration expenses of the trust. Section 1548 of the Civil Practice Act has no application to estates in the Surrogates' Courts or to the compensation of testamentary fiduciaries. The allowance of commissions in this court is controlled exclusively by the provisions of section 285 of the Surrogate's Court Act. Under the provisions of section 316 of that act, the provisions of the Civil Practice Act may only be invoked where the Surrogate's Court Act fails to furnish an exclusive right or mode of procedure in this court. Methods of procedure, such as examinations before trial, motions for bills of particulars and other forms of applications for relief, contained in the practice of the Supreme Court, may be used in the Surrogate's Court where they are consistent with or auxiliary to our own form of procedure. (*People ex rel. Lewis* v. *Fowler*, 229 N. Y. 84.) Where the forms of procedure in either court are dissimilar and exclusive, the provisions of the Surrogate's Court Act must govern in estate matters. (*Matter of O'Brien*, FEELY, S., 146 Misc. 555, at p. 563.) Section 1548, therefore, has no pertinency to the award of compensation or commissions in a testamentary estate or to an agreement to accept a lesser amount in such estates. It is also clear that section 1548 does no more than grant a right of election to choose between the lower compensation fixed in a deed of trust and the statutory commissions applicable in the Supreme Court, just as a substantially similar right of election is granted in testamentary estates under section 285 of the Surrogate's Court Act.

The surrogate holds in conclusion that the executor Doubleday is not entitled to any award of statutory commissions or any amount greater than the fixed sum which he agreed to take. A partial distribution of the fixed amount of $100,000 is now requested. The amounts proposed and the source of payments recommended in the account by the executor Mr. Daveler are approved by the surrogate. Similar payments on account may be made to Mr. Doubleday. The amount to be paid to the estate of Mr. Ronaghan, the deceased fiduciary, will be determined upon the settlement of the final decree.

Proceed accordingly.

(Opinion of November 3, 1939.)

FOLEY, S. A further question of construction is presented for determination in the pending accounting proceeding of the executors. It involves the interpretation of article third of the codicil and is raised by the answer of Pennell N. Aborn, as committee of the New York property and as domiciliary guardian in Massachusetts of the estate and person of Ernest Segar, an incompetent and the life beneficiary of a trust created by that article. In it Mr. Hayden directed his executors to set aside sufficient moneys or securities to produce a net income of $5,000 per year. The fund was directed to be delivered to his trustees with instructions " to apply such part of the net income, but not in excess of the sum of Five Thousand Dollars ($5,000) a year, to the use of said Ernest Segar for his comfortable maintenance and support so long as he may live in such installments all as my Trustees in their uncontrolled discretion may determine." He further provided that if in each calendar year the net income of the fund was less than $5,000, and if the net income was insufficient for the comfortable maintenance and support of the incompetent, the trustees might invade the principal in order to make up the designated maximum of annual allowance. The excess income, if any, over and above the requirements for support as expended by the trustees, was directed to be paid to the charitable residuary legatee, the Charles Hayden Foundation.

Dispute has arisen because of the demand of the committee made upon the trustees for the payment of certain charges. The detailed nature of these items is hereafter discussed but it may be stated they consisted in general of liabilities of the incompetent incurred before the inception of the trust, attorney's fees, administration expenses of the domiciliary guardian and other similar items. The trustees have refused to pay these charges which aggregate $5,623.76. In justification of their refusal they rely upon the very broad discretion vested in them by the testator under the terms of the codicil and upon the decisions which have construed such language in other wills and have held that the reasonable exercise of discretion is not subject to judicial review. They also make the additional contention that the rejected items were not contemplated by the testator and were not included within his phrase, " comfortable maintenance and support " of the beneficiary.

Upon the first contention of the trustees the terms of the will are extraordinary in the extensive grant of discretion given to the trustees to appropriate and apply moneys which they deem requisite for the support of the incompetent. The testator described the exercise of that authority as being based upon " the uncontrolled discretion of the trustees." He furthermore declared that they

should be the " sole judge " of the sufficiency of the income applicable to the needs of the beneficiary and the amount, if any, to which principal should be invaded.

In the ordinary case where the will vests discretion in a trustee to apply the income of a trust or part of it to the care and support of a beneficiary, the courts will not interfere with the exercise of such discretion. (*Matter of Littman*, 165 Misc. 285; *Ireland* v. *Ireland*, 84 N. Y. 321; *Hamilton* v. *Drogo*, 241 id. 401, 404; *Bloodgood* v. *Lewis*, 209 id. 95; *Matter of Sand* v. *Beach*, 270 id. 281; *Matter of Hilton*, 174 App. Div. 193; *Matter of Shea*, 234 id. 176; *Matter of Cowen*, 148 Misc. 35.) Where bad faith, abuse of discretion, arbitrary action, or fraud or diversion of the income to improper purposes by the trustee is shown, judicial action may be exercised. (*Matter of Martin*, 269 N. Y. 305; *Matter of Flood*, 127 Misc. 797; affd., 216 App. Div. 711; affd., 243 N. Y. 598; *Rezzemini* v. *Brooks*, 236 id. 184; *Matter of Gatehouse*, 149 Misc. 648.)

Because of the forceful language and broad grant of discretion in the will of Mr. Hayden, judicial intervention should be resorted to only when strong evidence tending to show arbitrary abuse of the authority of the trustees is shown. No such conduct on the part of the trustees has been established here.

Moreover, there are additional reasons for the denial of the claims of the committee because of the extraordinary nature of the payments which they demand the trustees should make in contravention of the language of the will. Certain of these items are for liabilities which arose before the death of Mr. Hayden in connection with a business venture of the incompetent and particularly as to certain real property owned by him in Newark, N. J. One item is for services and traveling expenses of an attorney rendered before Mr. Hayden's death. Another is a claim for interest on a debt due the same attorney which was similarly incurred before the inception of the trust. By no stretch of the imagination could the phrase, " comfortable maintenance and support " be construed to include the payment of the liabilities of the incompetent incurred before the trust came into existence. There are other items, aggregating $1,400 for brokers' commissions in the leasing of the real estate, shortly after the death of the testator and for the services and expenses of an attorney in connection with such lease. The total asked for the attorney's fees and disbursements approximates $3,000. His services and other liabilities were directly connected with the administration of the incompetent's individual property which is entirely separate and independent of the testamentary benefits. There is strong indication that this property is of considerable value and that it produces a substantial rental. All of

the disputed items were properly disallowed by the trustees. They constitute, if reasonable, charges which should be paid out of the individual property of the incompetent in the hands of the committee. There is no suggestion in the will that Mr. Hayden intended that these expenditures should be paid out of the income of the trust which he created for the support of the incompetent.

It should be noted that the trust here is a trust with authority to the trustees " to apply " the income. The duty of application is vested in the trustees. (*New York Trust Co.* v. *Black*, 178 App. Div. 4; affd., 223 N. Y. 703; *Matter of McCormick*, 40 App. Div. 73; *Matter of Connolly*, 71 Misc. 388.) It is unlike an ordinary trust with directions for the *payment* of income, where, if the beneficiary is an incompetent or an infant, the income is paid over to the committee or guardian respectively and expended for the maintenance of the ward. The trustees have, therefore, properly assumed the responsibility placed upon them by the will by the direct application of income to the needs of the incompetent. They would have been remiss in their duty if they had attempted to make the committee of the incompetent the exclusive conduit for distribution and application of the funds.

The terms " maintenance and support " as used in this will have an established meaning. They comprehend anything requisite for the housing, feeding, clothing, health or other proper cognate purposes. (*Matter of Vanderbilt*, 129 Misc. 605; affd., 220 App. Div. 830; *Matter of Wells*, 165 Misc. 385; *Matter of Van Zandt*, 231 App. Div. 381.)

The surrogate construes the will of Mr. Hayden accordingly and sustains as reasonable the conduct of the trustees in refusing to pay the debts of the incompetent incurred before the death of the testator and all charges for legal services, brokerage commissions, the expenses of the committee or his compensation, guardian fees and other administration expenses of the incompetent's estate in the domiciliary jurisdiction in Massachusetts. If these charges had been paid they would have constituted improper diversions of the excess income from the beneficient purposes of the charitable residuary legatee and thereby violated the terms of the codicil.

In the payment of the proper charges the trustees have acted in the liberal manner contemplated by the testator.

The decisions of the Court of Appeals in *Rezzemini* v. *Brooks* (236 N. Y. 184) and in *Matter of Martin* (269 id. 305) have no application to the language of the codicil in the present proceeding or to the extraordinary nature of the charges attempted to be foisted upon the trust income.

An intermediate decree may be submitted on notice accordingly, or, in the alternative, the determinations made in this decision may be incorporated by appropriate provisions in the final decree.

(Opinion of October 26, 1939.)

FOLEY, S.    Among other issues in this proceeding for the judicial settlement of the account of the executors and for the construction of the will, there is presented for determination a question as to the time of periodic payments of an annuity given by article first of the codicil to the will.    The issue is raised by the objections filed by the Charles Hayden Foundation, the residuary legatee and the corporation entitled to the remainder of the trust.    Article first reads as follows: " If Anita Stewart de Braganza, of New York City, New York, survives me, I direct my Executors to set apart such properties, moneys and/or securities having a value of Five Hundred Thousand Dollars ($500,000), all as they in their uncontrolled discretion shall determine, and I give, devise and bequeath such properties, moneys and/or securities, to my Trustees, in trust, nevertheless, to invest the same and keep the same invested (with power to change investments from time to time) and to receive the income therefrom, and after first deducting all expenses attendant upon the execution of the trust, to pay out of such income to said Anita Stewart de Braganza in quarterly installments or oftener as my Trustees may determine the sum of Thirty Thousand Dollars ($30,000) a year so long as she shall live, and the excess income, if any, shall be paid to my residuary estate or to said Foundation if then in existence, as the case may be.    If in each calendar year the net income of said trust shall be insufficient to pay said sum of Thirty Thousand Dollars ($30,000) then I direct my trustees to take from the principal of said trust and pay to said Anita Stewart de Braganza a sum equal to the difference between the net income for such year and Thirty Thousand Dollars ($30,000), and I give and bequeath the same to her.    Upon the death of said Anita Stewart de Braganza said trust shall cease and determine, and the principal then remaining therein shall be turned over to and become a part of my Residuary Estate or to said Foundation if then in existence, as the case may be."

In compliance with the directions of the will, a trust fund was set up and securities purchased which now yield an income of $15,450 per year.    It will be seen that the fund provided by the testator is insufficient to produce the amount of the annuity, thereby an invasion of the principal is required to make up the amount of the deficit. It is the contention of counsel for the Foundation that the trustees should make payments to Anita Stewart de Braganca (referred to

in the will as Braganza), during the course of the year only out of net income then available and that payments to her out of corpus should not be made until the end of each year. On the other hand, counsel for the trustees and the annuitant urge that the testator intended that the trustees must pay the full rate of $30,000 per annum in installments quarterly, or oftener in their discretion, regardless of the amount of income on hand.

The surrogate sustains the latter contention and holds that the trustees must pay the sum of $7,500 quarterly out of income and if income be insufficient, out of principal. They may exercise their discretion to make the installment payments more frequently, but the periodic distributions must be proportional in aggregate to the quarterly installments required by the terms of the codicil.

Because of the interest dates of the bonds held within the trust, the income does not accrue in regular amounts. Under the plan urged by counsel for the Foundation the annuitant would be entitled to relatively low income payments during the greater part of the year and would be compelled to wait until the end of the calendar year for the balance of her annuity. It is estimated that the final installment for the fourth quarterly period would approximate $20,000 under this arrangement. I find no evidence in the will justifying such a method of payment. The dominant direction of the testator clearly appears to be that the annuity was to be paid " in quarterly installments " whether from income or principal. The regular flow of the annuity at these periodic dates was intended to be of special benefit for the designated object of the testator's bounty. Because of his long experience in banking and investment business he must have known that the trust fund of $500,000 would not yield sufficient income to pay the fixed annual payment. Resort by the trustees to an invasion of principal must, therefore, have been contemplated by the testator. Provisions for invasion of principal are necessarily embodied in the will to meet the necessities of the situation. There is no significance in the use of the term " calendar year " as indicating a postponement of the final payment of the annuity to the end of the year when the deficit in income would become known. The testator's plan comprehended payments to be made quarterly or oftener as the trustees might decide. In *Matter of Garson* (161 Misc. 720) Mr. Surrogate FEELY reached the same conclusion as that found here in the interpretation of a will involving substantially similar provisions. Incidentally it should be observed that the method of installment payments urged by the trustees and opposed by the Foundation will involve a very insignificant loss of interest in comparison with the size of the trust and the magnitude of the residuary estate.

The surrogate further holds that the provisions of section 204 of the Surrogate's Court Act relating to apportionment of income, have no application to the terms of the will here.

The objection of the Foundation is overruled and the will construed in accordance with this decision.

An intermediate decree may be submitted on notice in accordance with this decision or, in the alternative, an appropriate direction may be included in the final decree to be entered at the close of the entire proceeding.