In the Matter of the Estate of MARIA WILLETS, Deceased.

Surrogate's Court, New York County, November 29, 1939.

*Carter, Ledyard & Milburn* [*Leslie D. Dawson* of counsel], for the executors.

*Mortimer Kraus,* for Elise Y. Willets, as executrix, etc., of Howard Willets, deceased, objector.

FOLEY, S. The surrogate holds that the instrument dated October 13, 1933, executed by Howard Willets, constituted a valid and enforcible agreement against him. It was executed in the lifetime of the decedent. He survived her and died previous to the initiation of the present accounting proceeding. In the instrument, which is written in his own handwriting, he stated: " In the event of the death of Maria Willets, before the payment to her of the notes of the Alamo Coal Co., amounting to ten thousand dollars, I consent to and direct the executors of her estate to deduct from any monies left to me by her will, the said amount of ten thousand dollars and to deliver to me the notes representing that amount. (Signed) Howard Willets."

The decedent was of advanced age and during the latter part of her life Howard Willets, her nephew, acted as her attorney in fact under a power of attorney executed by her on December 4, 1912. She died April 27, 1937. He appears to have supervised her investments and the collection and payment of income thereon.

The surrogate finds there was ample consideration for his written agreement to have charged against his interest in her estate the sum of $10,000. This sum represented two loans of $5,000 each made by the testatrix to the Alamo Coal Company, the first in 1925 and the second immediately subsequent to the date of his agreement in October, 1933. Howard Willets was a director and chairman of the executive committee of that corporation. The evidence shows that he was active in its management and financial affairs. His letter of October 13, 1933, which accompanied the agreement of relinquishment, set forth above, and written upon the same day is particularly illuminating as to the circumstances surrounding the transaction. It is also impressive as showing that he anticipated or feared that his conduct as her attorney in fact in making the loan of her funds to his company — the Alamo Coal Company — might be the subject of criticism after her death. He stated in his letter that the agreement was executed by him to avoid any such criticism. The new loan from the moneys of the testatrix furnished ample valuable consideration for his agreement of assumption of liability as to both loans.

The enforcibility of an agreement of a potential legatee made during the lifetime of the owner of the estate to release or relinquish a part or all of an interest in such estate is unquestioned. In my recent decision in *Matter of Hayden* (172 Misc. 669) I had occasion to review the authorities dealing with such agreements not only as to a potential fiduciary, there directly involved, but also as to possible next of kin and legatees. I pointed out that the leading authority upon that question is *Matter of Cook* (244 N. Y. 63).

The further contention here that the agreement should have been signed not only by the party relinquishing but also by the testatrix is overruled. Such instruments are only required to be signed by the person who yields or waives a right. (*Matter of Hayden, supra; Matter of Moore*, 165 Misc. 683, affd., 254 App. Div. 856; affd., 280 N. Y. 733.)

Finally, on this phase of the case the confidential relationship of principal and attorney in fact, which existed between the testatrix and Howard Willets at the time of the transactions, and the application of the rule requiring the strictest scrutiny in cases of divided loyalty and self-interest also lend strong support for the conclusion that the agreement is valid and enforcible. (*Meinhard* v. *Salmon*, 249 N. Y. 458, 464, 467; *Matter of Long Island L. & T. Co.*, 92 App. Div. 1, affd., 179 N. Y. 520; *Matter of Schmidt*, 163 Misc. 156.) There is not the slightest indication in the evidence that Howard Willets ever consulted with the testatrix concerning the second loan. His letter of October 13, 1933, plainly indicates that he made the investment as her confidential agent upon his own responsibility. "Certain it is also that there may be no abuse of special opportunities growing out of a special trust as manager or agent." (Cardozo, Ch. J., in *Meinhard* v. *Salmon, supra*.) Willets recognized the embarrassment of his position and made the agreement. His own estate is equally bound by it. His executrix may not escape the effect of his express consent and directions to the executors of Miss Willet's estate to set off the amount of the loans. Pursuant to the terms of the agreement the sum of $10,000 must be deducted from his share in the estate of the testatrix, and the balance, if any, paid to his estate.

Upon the question of the construction of the will I hold that the legacies of stock of the American Telephone and Telegraph Company are clearly specific. (*Matter of Security Trust Co.*, 221 N. Y. 213; *Matter of Lamborn*, 171 Misc. 734; *Matter of Tuck*, Id. 37; *Matter of Mitchell*, 114 Misc. 370.) The first codicil is unquestionably clear because the testatrix by the use of the words "specific legacies" labeled the gifts of the stock. When read with the other testamentary instruments the further legacy of the shares of the same stock contained in the so-called "additional codicil" must also be deemed to be specific in nature.

The first objection to the account filed by the estate of Howard Willets has been withdrawn. The second objection is overruled.

Submit decree on notice construing the will and settling the account accordingly.